STATE of Minnesota, Appellant,

v.

**Julie Ann KLAMAR, Respondent.**

No. A12–1196.

Court of Appeals of Minnesota.

Dec. 10, 2012.

688

Lori Swanson, Attorney General, St. Paul, MN; and Susan L. Segal, Minneapolis City Attorney, Jennifer Saunders, Zenaida Chico, Assistant City Attorneys, Minneapolis, MN, for appellant.

Mark D. Nyvold, Assistant State Public Defender, St. Paul, MN; and Joel N. Heiligman, Minneapolis, MN, for respondent.

Considered and decided by STONEBURNER, Presiding Judge; LARKIN, Judge; and KLAPHAKE, Judge.*

## OPINION

LARKIN, Judge.

In this pretrial appeal, the state challenges the district court's order granting respondent's motion to dismiss a charge of driving while impaired. The state argues that the district court erred in concluding that a law-enforcement officer violated the constitutional protections against unreasonable search and seizure when the officer ordered respondent out of a vehicle to investigate whether respondent had been driving while impaired. Because the investigative seizure was reasonable at its inception and in its scope, we reverse the district court's order and remand for further proceedings.

## FACTS

On December 1, 2011, a state trooper was on duty and driving on Interstate 94

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

near Lowry Avenue in Minneapolis at approximately 1:00 a.m. The trooper observed a vehicle stopped on the right shoulder of the freeway. The trooper activated the emergency lights on his vehicle and pulled up behind the stopped vehicle to conduct a welfare check. As he did so, he observed the passenger door open and the passenger vomiting. The trooper approached the passenger side of the vehicle and noticed a strong odor of alcohol emanating from the vehicle. Respondent Julie Ann Klamar was seated in the driver's seat. From the passenger side of the vehicle, the trooper asked Klamar what the problem was. Klamar replied that her friend, the passenger, was not feeling well and was getting sick. The trooper later testified that during the exchange, he observed that Klamar's eyes were bloodshot and watery. While standing near the passenger door, the trooper asked Klamar for her driver's license and whether she had had anything to drink. Klamar replied that she had "one drink." The trooper asked Klamar to step out of the vehicle and approach the trooper's vehicle.

Klamar got out and walked toward the back of her vehicle. The trooper also walked toward the back of the vehicle, where he met Klamar. The trooper later testified that he then noticed an odor of alcohol emanating from Klamar and that Klamar's eyes were bloodshot and watery. The trooper asked Klamar to perform field sobriety tests. Klamar agreed to do so, and she performed poorly. Next, the trooper conducted a preliminary breath test, which indicated that Klamar had an alcohol concentration of .122. The trooper arrested Klamar, and appellant State of Minnesota subsequently charged her with driving while impaired.

1. Klamar moved the district court for an order suppressing all evidence obtained as a

Klamar moved to dismiss the charge under the United States and Minnesota Constitutions, arguing that the trooper did not have a reasonable, articulable suspicion of criminal activity to support expansion of the initial welfare inquiry. The district court dismissed the charge, reasoning that "the trooper prematurely ordered [Klamar] to step out of the vehicle to perform field-sobriety tests, prior to establishing facts to support an 'objective and particularized basis' for his suspicion of illegal activity." The district court concluded that "[o]nce the trooper ordered [Klamar] out of the vehicle with his squad car directly behind [Klamar's] vehicle, [Klamar's] compliance with the trooper's request was compelled. Accordingly, . . . a seizure occurred at that point and . . . the [s]tate failed to show an articulable and reasonable suspicion for the state trooper to expand the scope of the initial welfare check." This pretrial appeal by the state follows.

## ISSUE

When a law-enforcement officer approaches a vehicle that is stopped on the side of an interstate at an early morning hour, to check on the welfare of its occupants, encounters a driver and one passenger in the vehicle, smells a strong odor of alcohol emanating from the vehicle, and is informed by the driver that she has had one drink, may the officer order the driver to exit her vehicle for investigative purposes without violating the protections of the United States and Minnesota Constitutions?

## ANALYSIS

■ When the state appeals a pretrial suppression order,[1] "the state must clearly

result of any search and seizure that violated her constitutional rights and dismissing the

and unequivocally show both that the trial court's order will have a critical impact on the state's ability to prosecute the defendant successfully and that the order constituted error." *State v. Scott*, 584 N.W.2d 412, 416 (Minn.1998) (quotations omitted). Because the district court dismissed the charge against Klamar as the result of its suppression order, the critical-impact standard is satisfied. *See State v. Gauster*, 752 N.W.2d 496, 502 (Minn.2008) (stating that critical impact is present when suppression of evidence leads to the dismissal of charges).

■ "When reviewing pretrial orders on motions to suppress evidence, we may independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). We review the district court's findings of fact under a clearly erroneous standard, but we review its legal determinations de novo. *State v. Bourke*, 718 N.W.2d 922, 927 (Minn.2006). Deference must be given to the district court's credibility determinations. *See State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989) (stating that "[t]he weight and credibility of the testimony of individual witnesses" is for the fact-finder to determine).

### I.

■ The United States and Minnesota Constitutions prohibit unreasonable search and seizure by the government. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A police officer may, however, initiate a limited investigative seizure without a warrant if the officer has reasonable articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Whether the police have reasonable suspicion to conduct an investigative seizure depends on the totality of the circumstances, and a showing that the seizure was not "the product of mere whim, caprice, or idle curiosity." *In re Welfare of M.D.R.*, 693 N.W.2d 444, 448 (Minn.App.2005) (quotation omitted), *review denied* (Minn. June 28, 2005). The factual basis required to justify an investigative seizure is minimal. *Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 560 (Minn.App.2005). The court may consider the officer's experience, general knowledge, and observations; background information, including the nature of the offense suspected and the time and location of the seizure; and anything else that is relevant. *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987).

■ The analysis of an investigative seizure involves a dual inquiry. *State v. Askerooth*, 681 N.W.2d 353, 364 (Minn. 2004). First, we ask "whether the [seizure] was justified at its inception." *See id.* (citing *Terry*, 392 U.S. at 19–20, 88 S.Ct. at 1879). Second, we ask "whether the actions of the police during the [seizure] were reasonably related to and justi-

---

charge against her. Although the district court's order in this case was for dismissal rather than suppression, it is based on implicit conclusions that any evidence obtained from Klamar as a result of her unconstitutional seizure must be suppressed and that the state had inadequate evidence to support the charge without the suppressed evidence. *See State v. Jackson*, 742 N.W.2d 163, 177–78 (Minn.2007) ("Generally, evidence seized in violation of the constitution must be sup-

pressed."); *State v. Harris*, 590 N.W.2d 90, 97 (Minn.1999) ("If [the defendant] was seized at any point before the police officers had reasonable articulable suspicion to seize him, then he was illegally seized and any evidence gathered thereafter must be suppressed."). We therefore construe the district court's order as one for suppression of evidence obtained in violation of constitutional protections.

fied by the circumstances that gave rise to the [seizure] in the first place." *See id.* (citing *Terry,* 392 U.S. at 19–20, 88 S.Ct. at 1879). The second prong of the inquiry "constrains the scope and methods of a search or seizure." *Id.* A seizure that is initially valid "may become invalid if it becomes 'intolerable' in its 'intensity or scope.'" *Id.* (quoting *Terry,* 392 U.S. at 17–18, 88 S.Ct. at 1878). "[E]ach incremental intrusion during a [seizure] must be 'strictly tied to and justified by the circumstances which rendered [the initiation of the [seizure]] permissible.'" *Id.* (quoting *Terry,* 392 U.S. at 19, 88 S.Ct. at 1878) (other quotation omitted). With these constitutional principles in mind, we analyze the constitutionality of Klamar's seizure.

*The Initial Seizure*

■ We must first determine when Klamar was seized for constitutional purposes. Not every interaction between the police and a citizen amounts to a seizure. *State v. Cripps,* 533 N.W.2d 388, 390 (Minn.1995). Rather, a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Id.* at 391 (quotations omitted). "Under the Minnesota Constitution, a person has been seized if in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was neither free to disregard the police questions nor free to terminate the encounter." *Harris,* 590 N.W.2d at 98 (quotation omitted).

■ Minnesota has adopted the *Mendenhall–Royer* standard for judging the totality of the circumstances. *See In re Welfare of E.D.J.,* 502 N.W.2d 779, 781–82 (Minn.1993) (citing *United States v. Mendenhall,* 446 U.S. 544, 554–55, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *Florida*

*v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983)). "Under that standard, some of the circumstances that might indicate a seizure has taken place include: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Harris,* 590 N.W.2d at 98 (quotations omitted). "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *E.D.J.,* 502 N.W.2d at 781 (quotation omitted).

■ It is generally established that a seizure occurs when a police officer stops a vehicle. *Delaware v. Prouse,* 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). But the trooper in this case did not stop Klamar's vehicle; he pulled up and parked behind the vehicle when it was already stopped along the side of the freeway. "[C]ourts generally have held that it does not by itself constitute a seizure for an officer to simply walk up and talk to a person standing in a public place or to a driver sitting in an already stopped car." *State v. Vohnoutka,* 292 N.W.2d 756, 757 (Minn.1980). In addition, the Minnesota Supreme Court has held that an officer's use of a squad car's flashing red lights, when pulling up and stopping behind a car parked on the shoulder of a highway at night, does not turn the encounter into a Fourth Amendment seizure. *State v. Hanson,* 504 N.W.2d 219, 220 (Minn.1993). But this court has found a show of authority sufficient to constitute a seizure where officers asked a person to exit a parked vehicle and approach the officer. *See State v. Day,* 461 N.W.2d 404, 407 (Minn. App.1990) ("On the other hand, it is likely

to be a seizure if a person is ordered out of a vehicle, or the police engage in some other action or show of authority which one would not expect between two private citizens."), *review denied* (Minn. Dec. 20, 1990).

■ Applying these authorities, we conclude that the trooper's approach to Klamar's vehicle to check on the welfare of its occupants was not a seizure. Klamar's vehicle was already stopped when the trooper first observed it. The trooper approached the vehicle and spoke to Klamar through the passenger door; he did not summon Klamar to approach him. Under these facts, the trooper's conduct would not have communicated to a reasonable person in Klamar's circumstances an attempt to seize her. *See Hanson*, 504 N.W.2d at 220 ("A reasonable person would have assumed that the officer was not doing anything other than checking to see what was going on and to offer help if needed."). Klamar was not seized until the trooper ordered her to exit her vehicle and approach his vehicle. At that point, Klamar had admitted alcohol consumption and reasonably would have concluded that she was not free to disobey the order. *See State v. Harris*, 590 N.W.2d 90, 103–04 (Minn.1999) (concluding that defendant was seized when the police found drug packaging in his bag and asked him where the drugs were, because at that point, "a reasonable person would not have[ ] felt free to terminate the encounter").

### The Basis for the Initial Seizure

■ Having determined that Klamar was seized when the trooper ordered her to exit her vehicle, we next consider whether the seizure was constitutionally reasonable. To be reasonable, the basis for an intrusion must satisfy the following objective test: " 'would the facts available to the officer at the moment of the seizure ... warrant a [person] of reasonable caution in the belief that the action taken was appropriate.' " *Askerooth*, 681 N.W.2d at 364 (quoting *Terry*, 392 U.S. at 21–22, 88 S.Ct. at 1880) (other quotation omitted). In turn, the test for appropriateness balances the government's need for the seizure "and the individual's right to personal security free from arbitrary interference by law officers." *Id.* at 365 (quoting *United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975)) (quotation marks omitted).

> There is no fixed or definitive test for the reasonableness of an investigatory [seizure]. Rather, we must balance the need for the [seizure] against the invasion [it] entails. There can be no rational disagreement that an investigatory [seizure] is necessary when the totality of the circumstances points to some observable "unusual conduct ... [that leads the officer] reasonably to conclude in light of his experience that criminal activity may be afoot." But the officer must articulate specific facts that, "taken together with rational inferences from those facts," reasonably justify the [seizure]. The officer need not be absolutely certain of the possibility of criminal activity, but he cannot satisfy the test of reasonableness by relying on an "inchoate and unparticularized suspicion or 'hunch.' "

*State v. Schrupp*, 625 N.W.2d 844, 846–47 (Minn.App.2001) (citations omitted), *review denied* (Minn. July 24, 2001). The police may seize a person so long as the facts "support at least one inference of the possibility of criminal activity." *Id.* at 847–48.

The district court's decision in this case was based, in significant part, on its determination that the trooper was not a credible witness at the motion hearing. The district court noted that the area where the trooper stood while talking to Klamar

from the passenger side of her vehicle was not well lit and that the trooper did not use a flashlight. The district court also noted that the trooper remained on the passenger side of Klamar's vehicle when he questioned her within the vehicle, stating, "the trooper never approached [Klamar] in close enough proximity either at the driver's window or the driver door prior to ordering [Klamar] out of the vehicle to perform field sobriety tests." The district court determined that "it would have been difficult for the trooper to make the required particularized observation such as bloodshot and watery eyes and an odor of alcohol from [Klamar's] breath" while speaking with Klamar from the passenger side of the vehicle and that "[t]he trooper most likely observed the indicia of intoxication [specific to Klamar] after he ordered [Klamar] out of the car and after he moved closer to [Klamar] in the rear portion of the vehicle."

In determining whether the totality of the circumstances justified the initial seizure in this case, we defer to the district court's credibility determination. *See Moore*, 438 N.W.2d at 108. But we observe that the district court did not discredit the trooper's testimony that he smelled a strong odor of alcohol emanating from the vehicle; the court merely determined that it would have been difficult for the trooper to ascertain that Klamar's breath was the source of the odor prior to ordering her out of the car. Thus, the circumstances at the time of Klamar's initial seizure were as follows: Klamar was seated in the driver's seat of a vehicle that was stopped on the shoulder of an interstate at approximately 1:00 a.m., there was one passenger in the vehicle, there was a strong odor of alcohol emanating from the vehicle, the source of the odor was unknown, and Klamar admitted that she had consumed "one drink."

We have no difficulty concluding that these circumstances led the trooper to reasonably conclude that criminal activity—driving while impaired—may have been afoot. The trooper was not acting on mere whim, caprice, or idle curiosity, nor was he acting on an inchoate, unparticularized suspicion or hunch. He had a reasonable basis to suspect that Klamar had been driving while impaired and to detain Klamar while he investigated that suspicion. *See State v. Lopez*, 631 N.W.2d 810, 814 (Minn.App.2001) (concluding that an officer had a reasonable basis to detain the occupants of a car and conduct an investigation when, during the lawful act of approaching the car, the officer detected an odor of alcohol coming from the car's interior), *review denied* (Minn. Sept. 25, 2001).

Klamar argues that even if there was a generalized odor of alcohol emanating from the vehicle, the circumstances did not legally support the trooper's actions. Klamar cites *State v. Burbach*, 706 N.W.2d 484, 489 (Minn.2005), as support and argues that "in *Burbach*, the generalized odor of alcohol did not create a particularized suspicion to seize the driver and vehicle, where the driver and passenger were of legal drinking age, and the passenger said he had been drinking." In *Burbach*, an officer "detected a strong odor of alcohol" while speaking with the driver of a vehicle, "but he could not tell if the smell came from [the driver] or her passenger." *Id.* at 486. "The passenger volunteered that the alcohol smell came from him." *Id.* Nonetheless, the officer ordered the driver out of the car. *Id.* Even though the officer smelled no odor of alcohol coming from the driver after she exited the car, the officer conducted field sobriety testing before ultimately concluding that the driver was not the source of the odor. *Id.*

Although *Burbach* is somewhat factually similar, it does not support a conclusion

that the investigative seizure in this case was unconstitutional, because the Minnesota Supreme Court did not consider or determine whether the officer impermissibly seized Burbach by ordering her from the car and conducting field sobriety tests. *See id.* at 488–89 (describing the issues presented as whether the odor of alcohol coming from an adult passenger provided reasonable articulable suspicion of an open-container violation and justified a request to search the vehicle and whether, under the totality of the circumstances, the officer's request to search the vehicle was justified by reasonable articulable suspicion of drug possession). Klamar's post-oral-argument citations to supplemental authorities are similarly unpersuasive.

Moreover, Klamar essentially agreed, at oral argument, that the circumstances justified Klamar's continued detention so the trooper could investigate whether she was the source of the alcoholic odor. Klamar argued, however, that it was constitutionally impermissible for the trooper to order her to leave her vehicle. Klamar contends that the trooper crossed a constitutional line when he ordered her out of her car instead of walking around the vehicle to speak with her through the driver's window.

Having determined that an investigative seizure was constitutionally justified under the circumstances, we discern no constitutionally significant distinction between ordering Klamar out of her vehicle for further investigation and continuing the investigation at the driver's window. In either event, Klamar was reasonably detained for investigative purposes. The degree of intrusion occasioned by directing her to exit her vehicle was not so significant as to render the seizure constitutionally offensive. In fact, because the odor of alcohol emanating from the vehicle could have come from Klamar, from her passenger, or from another source in the vehicle, it was reasonable for the officer to physically remove Klamar from the other possible sources.

United States Supreme Court precedent supports our conclusion. In *Pennsylvania v. Mimms,* the Supreme Court concluded that ordering a driver to get out of his car after the driver was lawfully detained was reasonable under the Fourth Amendment. 434 U.S. 106, 109–11, 98 S.Ct. 330, 332–33, 54 L.Ed.2d 331 (1977). In balancing the interests of the state and the driver, the court observed "that the State's proffered justification—the safety of the officer—is both legitimate and weighty" and that "[t]he hazard of accidental injury from passing traffic to an officer standing on the driver's side of the vehicle may also be appreciable in some situations." *Id.* at 110–11, 98 S.Ct. at 333; *see* Minn.Stat. § 169.18, subd. 11 (2010) (requiring drivers approaching a stopped emergency vehicle to move to the lane farthest from vehicle).

As for the driver's interest, the Supreme Court stated that the intrusion occasioned by the officer's order to get out of the car "can only be described as *de minimis.*" *Id.* at 111, 98 S.Ct. at 333. The court explained that:

> The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a serious intrusion upon the sanctity of the person, but it hardly rises to the level of a petty indignity. What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety.

*Id.* (citation and quotations omitted).

The Minnesota Supreme Court has cited *Mimms,* stating, "[i]t is correct that a

police officer may order a driver out of a lawfully stopped vehicle without an articulated reason." *Askerooth*, 681 N.W.2d at 367 (citing 434 U.S. at 111, 98 S.Ct. at 333). Although Klamar's vehicle was not stopped by the trooper, the trooper developed reasonable articulable suspicion supporting an investigative seizure while he spoke to her. We discern no meaningful distinction between the driver of a lawfully stopped vehicle and a driver who is lawfully seized while sitting in a parked vehicle—both drivers are reasonably seized. In sum, under *Mimms* and *Askerooth*, Klamar's removal from the vehicle pursuant to her lawful seizure did not render the seizure unconstitutional.

### The Incremental Intrusion

Having determined that Klamar's initial seizure was constitutionally permissible, we lastly consider whether the trooper's initiation of field sobriety and preliminary breath testing was reasonable. "[T]here are several investigative techniques which may be utilized effectively in the course of a *Terry*-type stop." *Michigan v. Summers*, 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981) (quotation omitted). But an intrusion that is not closely related to the initial justification for the seizure is invalid unless there is independent "reasonableness to justify that particular intrusion." *Askerooth*, 681 N.W.2d at 364. In this case, the field sobriety and preliminary breath testing arguably were closely related to the initial justification for the seizure—reasonable suspicion that Klamar was driving while impaired. But we need not decide whether the circumstances that justified removing Klamar from her vehicle also

justified requiring her to submit to testing, because the record demonstrates an independent basis for the testing.

The trooper testified that once Klamar was outside of her vehicle, he noticed an odor of alcohol emanating from Klamar and that Klamar's eyes were bloodshot and watery. The district court implicitly credited this testimony, explaining that "[t]he trooper most likely observed the indicia of intoxication [specific to Klamar] after he ordered [Klamar] out of the car and after he moved closer to [Klamar] in the rear portion of the vehicle." The trooper's observation of two indicia of intoxication specific to Klamar reasonably justified further intrusions in the form of field sobriety and preliminary breath testing. *See Hager v. Comm'r of Pub. Safety*, 382 N.W.2d 907, 911 (Minn.App.1986) (stating that a driver's bloodshot and watery eyes and an odor of alcohol provided reasonable suspicion of driving while impaired and a legal basis for a preliminary breath test).

### DECISION

The investigative seizure of Klamar was constitutionally reasonable both at its inception and in its scope. We therefore reverse the district court's order dismissing the charge against Klamar and remand for further proceedings.

**Reversed and remanded.**