*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0164**

State of Minnesota,
Respondent,

vs.

Sharleen Leslie Paulson,
Appellant.

**Filed February 9, 2015
Affirmed
Halbrooks, Judge**

Isanti County District Court
File No. 30-CR-12-358

Lori Swanson, Attorney General, Angela Helseth Kiese, Assistant Attorney General, St. Paul, Minnesota; and

Jeffrey Edblad, Isanti County Attorney, Cambridge, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrew W. Crouse, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Halbrooks, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

On appeal from her fifth-degree controlled-substance-possession conviction following a bench proceeding under Minn. R. Crim. P. 26.01, subd. 4, appellant

challenges the district court's denial of her pretrial motion to suppress the state's evidence. Appellant, the passenger in a vehicle subject to a traffic stop, argues that neither the traffic stop nor the expansion of the traffic stop was supported by reasonable, articulable suspicion of criminal activity. We affirm.

## FACTS

Shortly after midnight on July 2, 2012, an Isanti County deputy stopped an extended cab pickup truck in which appellant Sharleen Leslie Paulson was a front-seat passenger. The deputy had observed that the truck failed to come to a complete stop at a stop sign before making a left turn and then crossed over the fog line. In the deputy's experience, these traffic violations are common with impaired drivers.

After stopping the truck, the deputy identified the driver and observed that he had glassy, watery, bloodshot, and droopy eyes, and spoke quickly in a very excited manner. He believed that the driver might be impaired by a controlled substance, specifically methamphetamine. A records check revealed that the driver had an expired license. The deputy asked the driver to get out of the truck, at which point he observed fresh needle marks on the driver's arm that were consistent with controlled-substance use. The driver said the red marks were scratches from a screwdriver. The deputy then asked the driver to perform three field sobriety tests, and the driver failed the one-legged stand. When asked again about the marks on his arm, the driver stated that they were old scars from shooting speed.

The deputy requested consent to search the pickup truck. When the driver declined, the deputy asked appellant Paulson to step out of the truck, and the deputy's

2

certified narcotics-detection canine conducted a sniff around its exterior, alerting at the driver's door. The deputy searched the truck and found a pink container wedged between the front passenger seat and center console that held multiple bindle bags that field tested positive for methamphetamine. He also found a white purse containing Paulson's driver's license and three blue pills, a cell-phone case attached to the purse containing a bindle bag that tested positive for methamphetamine, a can insulator containing two methamphetamine pipes that tested positive, and more bindle bags and small drug paraphernalia. Paulson and the driver were arrested.

The state charged Paulson with fifth-degree possession of a controlled substance in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2010), and Paulson moved to suppress the evidence found in the truck. Following a contested omnibus hearing, the district court denied the motion, finding that the deputy's observations of traffic violations provided a valid basis for the stop and that the driver's appearance, fresh needle marks on his arm, and failure on the one-legged stand supported the expansion of the stop. Paulson stipulated to the state's case and proceeded under Minn. R. Crim. P. 26.01, subd. 4. The district court found Paulson guilty and convicted her of the charged offense, stayed imposition of her sentence, and placed her on probation. This appeal follows.

### DECISION

### I.

Paulson argues that the district court erred by determining that the traffic stop was supported by reasonable, articulable suspicion. When reviewing a ruling on a pretrial

suppression motion, we independently review the facts to determine whether, as a matter of law, the district court erred in its ruling. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). We review de novo a district court's "determination of reasonable suspicion as it relates to *Terry* stops." *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997) (footnote omitted).

An officer may conduct a limited investigatory stop if the officer has reasonable, articulable suspicion of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 20-21, 88 S. Ct. 1868, 1879-80 (1968). To meet the reasonable, articulable suspicion standard, an officer must "show that the stop was not the product of mere whim, caprice or idle curiosity" but rather "was based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *State v. Pike*, 551 N.W.2d 919, 921-22 (Minn. 1996) (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880).

The threshold for meeting the reasonable-suspicion standard is not high. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). A stop may be based on the officer's observation of even an insignificant traffic violation. *State v. Doebel*, 790 N.W.2d 707, 709 (Minn. App. 2010), *review denied* (Minn. Jan. 26, 2011) (upholding stop based on failure to use turn signal when changing traffic lanes). "In determining whether a stop is justified, we consider the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). Here, the deputy observed the truck fail to stop completely at a stop

sign and fail to stay completely within its lane of traffic. He testified that in his experience, these traffic violations are common with impaired drivers.

Under Minnesota law, a "vehicle shall be driven as nearly as practicable entirely within a single lane." Minn. Stat. § 169.18, subd. 7(a) (2010). Here, the driver crossed the fog line, thereby failing to drive "entirely within a single lane." There were no apparent external influences causing the driver to leave his lane, and Paulson does not argue otherwise. Paulson's argument that crossing a highway fog line is not a traffic violation in Minnesota is unfounded. We have held that "[c]rossing the center line is a violation of the traffic laws and will usually provide the officer with an objective, reasonable suspicion to conduct an investigatory stop." *State v. Wagner*, 637 N.W.2d 330, 336 (Minn. App. 2001) (interpreting Minn. Stat. § 169.18, subd. 7(a) (2000)). Crossing the fog line is analytically no different from crossing the center line, as both are deviations from the statutory requirement that a driver remain "within a single lane." *See* Minn. Stat. § 169.18, subd. 7(a). Crossing the fog line—at least without any extenuating circumstances—is a traffic violation. Failing to come to a complete stop at a stop sign is also a traffic violation. Minn. Stat. § 169.30(b) (2010) ("Every driver of a vehicle shall stop at a stop sign . . . ."). Rolling through a stop sign provides a valid basis for a traffic stop. *Lewis v. Comm'r of Pub. Safety*, 737 N.W.2d 591, 594 (Minn. App. 2007).

The traffic violations observed by the deputy provided at least reasonable, articulable suspicion to stop the truck. Based on the deputy's experience, the two traffic violations also supported reasonable, articulable suspicion of impaired driving. *See Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 241, 244-45 (Minn. App. 2010)

5

(concluding that the totality of the circumstances supported a traffic stop when the police officer observed two minor traffic violations and inferred that that driver could be impaired). We conclude that the district court properly found that the traffic stop was supported by reasonable, articulable suspicion. Whether based on the observations of two traffic violations or the inference therefrom that the driver was impaired, the stop "was not the product of mere whim, caprice, or idle curiosity."

## II.

Paulson argues that the deputy improperly expanded the scope of the traffic stop by subjecting the driver to field sobriety tests, asking for consent to search the truck, and by conducting a canine sniff around its exterior. The scope and duration of a traffic stop is limited to what is necessary to dispel the suspicion of criminal activity that justified the stop. *State v. Fort*, 660 N.W.2d 415, 418 (Minn. 2003). But expansion beyond the original basis for the stop is permitted when there is reasonable, articulable suspicion of criminal activity beyond the initial reason for the stop. *See id.* at 418-19. Here, the bases for the traffic stop were two traffic violations and the deputy's suspicion that they indicated impaired driving. The incremental expansions of the stop were closely related to the deputy's original suspicion that the driver was impaired.

Field sobriety tests are a limited intrusion that may be justified by reasonable, articulable suspicion of impaired driving. *State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (noting that the field sobriety test arguably is closely related to the initial justification for the stop—reasonable suspicion of impaired driving—but concluding that the driver's bloodshot eyes and the odor of alcohol provided an independent basis for the

6

testing). Before asking the driver to perform field sobriety tests, the deputy had observed two traffic violations that the deputy associated with impaired driving, the driver's glassy, watery, bloodshot, and droopy eyes, his fast and excited speech, and his fresh needle marks. The district court properly found that these observations supported the reasonable, articulable suspicion of impaired driving necessary to ask the driver to submit to field sobriety testing. *See id.* at 696 (concluding that an odor of alcohol combined with bloodshot and watery eyes provided the necessary reasonable suspicion to ask the driver to perform field sobriety tests).

An officer's request for consent to search a vehicle must be justified by the initial basis for the stop or be supported by a reasonable, articulable suspicion of additional criminal activity. *State v. Burbach*, 706 N.W.2d 484, 488 (Minn. 2005). Similarly, a canine sniff around the exterior of a vehicle must be justified by at least reasonable, articulable suspicion of drug-related criminal activity. *State v. Wiegand*, 645 N.W.2d 125, 137 (Minn. 2002). Here, in addition to the factors previously noted, the driver acknowledged that the marks on his arms were from past drug use, and the driver had failed one field sobriety test. Based on his training and experience, the deputy suspected that the driver was under the influence of methamphetamine.

Paulson relies on *Burbach* to argue that the request for consent to search was impermissible. But *Burbach* is inapposite because the driver here showed multiple signs of impairment and had fresh needle marks on his arm. Paulson also challenges the canine sniff of the exterior of the truck. But before the canine sniff, the deputy's suspicion that the driver was impaired by a controlled substance had not been dispelled; in fact, it had

7

been reinforced.  We conclude that under the totality of the circumstances, the deputy had reasonable, articulable suspicion to justify his request for consent to search the truck and to conduct a canine sniff of its exterior.

**Affirmed.**