*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A22-1819

State of Minnesota,
Respondent,

vs.

Sarah Jean Mona Dubinsky,
Appellant.

**Filed November 13, 2023**
**Affirmed**
**Hooten, Judge**[*]

Dakota County District Court
File No. 19HA-CR-21-701

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kathryn M. Keena, Dakota County Attorney, Heather D. Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie L. Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant).

Considered and decided by Connolly, Presiding Judge; Bjorkman, Judge; and

Hooten, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**HOOTEN**, Judge

In this direct appeal from the judgment of conviction for receiving stolen property, appellant Sarah Jean Mona Dubinsky argues that the district court erred in denying her motion to suppress evidence on the basis that the police unlawfully seized her by opening her truck door without a reasonable, articulable suspicion of wrongdoing. Because the opening of the truck door did not constitute a seizure, and the responding officer had a reasonable, articulable suspicion of wrongdoing when he later asked Dubinsky to step out of the vehicle, we affirm.

## FACTS

On July 14, 2020, officers were dispatched to investigate a report of a suspicious vehicle parked in the area of Kressin Avenue in Mendota Heights. The responding officer located the suspicious vehicle, a Ford truck, and drove past it. The officer then aired the license plate to police dispatch, made a U-turn, and stopped behind the truck. The officer did not turn on the emergency lights or sirens and did not block the truck in any way that would prevent the truck from leaving. The officer exited his squad car and approached the driver's side of the truck. The officer did not draw his gun during the approach, yell, or give any commands or orders. As the officer approached the truck, another officer aired over the radio dispatch to "hold the air."[1] A "hold the air" call indicates that the vehicle may be stolen, the registered owner may have a warrant, or there may be an alert on the

---

[1] "Hold the air" is a law enforcement request made for all other units to refrain from communicating over the radio.

truck for violence against police officers. Due to the "hold the air" call, the officer believed something could be dangerous with the vehicle. The officer proceeded to make contact with the individual in the truck, Dubinsky, and opened the front driver's side door.[2]

During the conversation with Dubinsky, the officer learned from dispatch over the police radio that the truck was reported stolen. The officer then asked Dubinsky to step out of the truck. Another responding officer placed Dubinsky under arrest.

The state charged Dubinsky with receiving stolen property for being in possession of a stolen motor vehicle valued at less than $1,000.[3] Dubinsky filed a motion to suppress all evidence, arguing that the officer did not have reasonable suspicion to seize her.

Ruling from the bench at a contested omnibus hearing after hearing testimony from the officer, the district court denied the suppression motion, finding that the officer "had a reasonable, articulable basis to approach the vehicle" to ask the driver who she was and why she was there to ascertain whether she required assistance. After learning that the vehicle was stolen, the officer had a reason to ask her to exit the vehicle to ensure that she did not flee. The district court also found that the officer's testimony regarding the incident was "believable and credible."

Dubinsky stipulated to the prosecution's case to preserve appellate review of the district court's ruling on her motion to suppress evidence, pursuant to Minn. R. Crim. P.

---

[2] It is unclear whether the officer opened the door or requested Dubinsky open the door, but the district court found that, in either case, Dubinsky did not voluntarily open the door.
[3] Minn. Stat. § 609.53 subd. 1 (2020); Minn. Stat. § 609.52. subd. 3(3)(d)(v) (2020).

26.01, subd. 4. The district court found Dubinsky guilty, entered judgment of conviction, and stayed imposition of sentence. This appeal followed.

**DECISION**

Dubinsky challenges the district court's denial of her motion to suppress evidence of the truck. She argues that a seizure occurred when the officer opened the truck door, and that the officer did not have reasonable suspicion to seize her at that moment.

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (citation and quotation omitted). "Findings of fact are clearly erroneous if, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred." *State v. Anderson*, 784 N.W.2d 320, 334 (Minn. 2010). "When facts are not in dispute . . . we review a pretrial order on a motion to suppress de novo and determine whether the police articulated an adequate basis for the search or seizure at issue." *State v. Williams*, 794 N.W.2d 867, 871 (Minn. 2011) (quotation omitted).

**I.      The officer did not seize Dubinsky when he opened her truck door.**

The Fourth Amendment of the U.S. Constitution, and article 1, section 10 of the Minnesota Constitution, prohibit unreasonable searches and seizures. Generally, warrantless searches and seizures are unreasonable under both the state and federal constitutions unless a recognized warrant exception applies. *Coolidge v. New Hampshire*, 403 U.S. 443, 474 (1971); *State v. Ortega*, 770 N.W.2d 145, 149 (Minn. 2009).

Not every encounter between police and an individual constitutes a seizure. *State v. Cripps*, 533 N.W.2d 388, 390 (Minn. 1995). Police questioning, by itself, is unlikely to result in a seizure. *I.N.S. v. Delgado*, 466 U.S. 210, 216-17 (1984); *Florida v. Royer*, 460 U.S. 491, 497-98 (1983). "[A] seizure occurs when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *State v. Klamar*, 823 N.W.2d 687, 692 (Minn. App. 2012) (quotation omitted). Further, a person is considered seized by police if, considering all of the circumstances, a reasonable person would not feel free to disregard police questions or end the encounter.[4] *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999).

Although a seizure generally occurs when a police officer stops a vehicle, *Whren v. United States*, 517 U.S. 806, 809-10 (1996), the Minnesota Supreme Court has held that "it does not by itself constitute a seizure for an officer to simply walk up and talk to a person standing in a public place or to a driver sitting in an already stopped car." *State v. Vohnoutka*, 292 N.W.2d 756, 757 (Minn. 1980); *see also Harris*, 590 N.W.2d at 98 ("A person generally is not seized merely because a police officer approaches him in a public place or in a parked car and begins to ask questions."). When evaluating whether police have seized an individual, this court reviews the totality of the circumstances for factors that may indicate a seizure occurred, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen,

---

[4] This is an objective standard. *Cripps*, 533 N.W.2d at 391. The subjective intention of the officer involved is inconsequential in determining whether a seizure has taken place. *See Michigan v. Chesternut*, 486 U.S. 567, 575 n. 7 (1988); *see also State v. Everett*, 472 N.W.2d 864, 867 (Minn. 1991).

or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *In re Welfare of E.D.J.*, 502 N.W.2d 779, 781 (Minn. 1993) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In the absence of some affirmative display of authority, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person. *Id.* (quoting *Mendenhall*, 446 U.S. at 555).

Dubinsky argues that she was seized when the responding officer walked up to the truck and opened the driver's side door. This argument is not persuasive. Approaching and contacting an individual in an already stopped car does not constitute a seizure absent some affirmative display of authority. *Harris*, 590 N.W.2d at 98; *E.D.J.*, 502 N.W.2d at 781. Without such a display of authority, otherwise inoffensive contact cannot, as a matter of law, amount to a seizure. *E.D.J.*, 502 N.W.2d at 781; *Overvig v. Comm'r of Pub. Safety*, 730 N.W.2d 789, 792-93 (Minn. App. 2007) (holding that the act of opening a car door, by itself, does not amount to a seizure). While Dubinsky suggests that a seizure occurs when police engage in conduct with a citizen beyond the bounds of normal citizen-to-citizen interaction, this suggestion misconstrues the applicable caselaw which provides only that such a situation means a seizure is "likely." *State v. Day*, 461 N.W.2d 404, 407 (Minn. App. 1990). As such, even if the officer's opening of the truck door was an action that moves beyond the bounds of normal citizen-to-citizen interaction, that alone does not mean a seizure has occurred.

The facts, as found by the district court, establish that the officer did not block Dubinsky's truck, turn on his lights or sirens, or make any show of authority during his

6

approach to the vehicle. Absent any show of authority, the officer's action of opening the truck door is the kind of "otherwise inoffensive contact" that cannot, as a matter of law, amount to a seizure. *E.D.J.*, 502 N.W.2d at 781 (quotation omitted).

Additionally, the opening of a vehicle door by an officer without any accompanying show of authority would not communicate to a reasonable person that the officer was attempting to seize the person. A reasonable person under the circumstances would not have felt seized and would assume that the officer was not doing anything other than checking to see what was going on and to offer help if needed. *See State v. Hanson*, 504 N.W.2d 219, 220 (Minn. 1993) (discussing a similar question in the context of emergency vehicle lights). As such, Dubinsky was not seized when the officer opened the truck door.

## II. The officer had reasonable, articulable suspicion of wrongdoing when he asked Dubinsky to step out of the truck.

This court has found a show of authority sufficient to constitute a seizure where officers asked a person to exit a parked vehicle and approach the officer. *Klamar*, 823 N.W.2d at 692-93 (citing *Day*, 461 N.W.2d at 407). Such a warrantless seizure must be supported by "a reasonable, articulable suspicion that criminal activity is afoot." *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (citations omitted). There is a reasonable, articulable suspicion if "the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The standard for reasonable suspicion is "not high," requiring "something more than an unarticulated hunch, that the officer must

7

be able to point to something that objectively supports the suspicion at issue." *State v. Bourke*, 718 N.W.2d 922, 927 (Minn. 2006) (quotations omitted).

This court undertakes a de novo review to determine whether a search or seizure is justified by reasonable suspicion and, in doing so, accepts the district court's factual findings unless they are clearly erroneous. *State v. Hunter*, 857 N.W.2d 537, 543 (Minn. App. 2014). Additionally, "[d]eference must be given to the district court's credibility determinations." *Klamar*, 823 N.W.2d at 691; *see also State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989) (stating that "[t]he weight and credibility of the testimony of individual witnesses" is for the fact-finder to determine).

Here, Dubinsky was seized when the officer asked her to step out of the truck because that request was a sufficient show of authority, and a reasonable person would not have felt free to end the encounter after that request. *Klamar*, 823 N.W.2d at 692-93 (citing *Day*, 461 N.W.2d at 407); *Harris*, 590 N.W.2d at 98.

That seizure was also supported by reasonable, articulable suspicion of wrongdoing. The officer testified that he was notified of the stolen status of the truck during his conversation with Dubinsky prior to asking her to step out of the vehicle.[5] The information provided to the officer objectively supports the suspicion that Dubinsky was involved in wrongdoing, and that information constitutes more than an unarticulated hunch. *Bourke*, 718 N.W.2d at 927.

---

[5] The district court found the officer's testimony believable and credible and, without evidence suggesting the district court's credibility finding was clearly erroneous, this court must defer to that determination. *Klamar*, 823 N.W.2d at 691.

Accordingly, Dubinsky was seized at the time the officer asked her to step out of the vehicle and the facts, as determined by the district court, establish that the officer had a reasonable, articulable suspicion of wrongdoing at that time to justify the seizure. Therefore, the district court did not err by denying Dubinsky's motion to suppress.

## III. Even if Dubinsky was unlawfully seized, there are no grounds for suppression.

The state also raises an alternative argument of inevitable discovery in favor of affirming the district court. A respondent can raise alternative arguments on appeal in defense of the underlying decision when there are sufficient facts in the record, there is legal support for the arguments, and the alternative grounds would not expand the relief previously granted. *State v. Grunig*, 660 N.W.2d 134, 137 (Minn. 2003). Because those conditions are satisfied here, we consider the state's alternative argument of inevitable discovery.

The exclusionary rule has traditionally barred evidence that is obtained either during or as a direct result of an unlawful invasion. *See Wong Sun v. United States*, 371 U.S. 471, 485-86 (1963). The inevitable-discovery doctrine functions as an exception to this rule and applies when officers possess lawful means of discovery and are, in fact, pursuing those lawful means prior to their illegal conduct. *State v. Barajas*, 817 N.W.2d 204, 219 (Minn. App. 2012); *see also State v. Warndahl*, 436 N.W.2d 770, 776 (Minn. 1989) (holding that Minnesota courts consider, among other factors, intervening circumstances and whether evidence would have been obtained in the absence of illegality in determining whether evidence is "fruit of the poisonous tree"); *Harris*, 590 N.W.2d at 105 ("We recognize an exception to this general rule, however, when the police would have obtained

the evidence if no misconduct had taken place.") (quotation omitted). This exception must be established by a preponderance of the evidence. *State v. Diede*, 795 N.W.2d 836, 849 (Minn. 2011).

The totality of the circumstances shows, by a preponderance of the evidence, that all evidence related to the truck would have been discovered even if Dubinsky was not seized. The officer testified that he aired the truck's license plate number to dispatch before parking behind the truck. The airing of the license plate to dispatch constitutes a lawful means of investigation that was being pursued prior to the officer's contact with Dubinsky. As such, law enforcement was already lawfully pursuing evidence related to the truck prior to any contact with Dubinsky, and that evidence would have been discovered whether or not the officer made contact with Dubinsky.

Ultimately, the officer had already lawfully begun pursuing evidence of the stolen truck due to his preliminary airing of the license plate to dispatch, placing that evidence within the inevitable discovery exception.

**Affirmed.**