*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0519**

State of Minnesota,
Respondent,

vs.

Paul Stephen Schaefer,
Appellant.

**Filed November 10, 2025**
**Affirmed**
**Bjorkman, Judge**

Mower County District Court
File No. 50-CR-24-613

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Kristen Nelsen, Mower County Attorney, Kea I. Maxwell, Assistant County Attorney, Austin, Minnesota (for respondent)

Ryan McKinney, McKinney Defense, PLLC, St. Louis Park, Minnesota (for appellant)

Considered and decided by Slieter, Presiding Judge; Bjorkman, Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges his conviction of fourth-degree driving while impaired (DWI), arguing that the district court erred by denying his motion to suppress all evidence because

the deputy lacked reasonable suspicion to initiate a traffic stop and impermissibly expanded the scope of the stop. We affirm.

## FACTS

At around 1:00 a.m. on a Sunday morning in March 2024, a Mower County deputy stopped a vehicle operated by appellant Paul Stephen Schaefer after twice observing the vehicle "touch the inner part of the fog line." When he approached the vehicle, the deputy noticed Schaefer had "bloodshot watery eyes, slight slurred speech, and what appeared to be droopy eyelids." He also detected the "odor of alcohol" coming from Schaefer's breath. Schaefer, the vehicle's sole occupant, stated that he had consumed four or five alcoholic beverages five to seven hours earlier.

Based on his observations, the deputy asked Schaefer to exit his vehicle and perform field sobriety testing. The deputy first administered the horizontal gaze nystagmus (HGN) test and observed all six signs of impairment. The deputy conducted five other field sobriety tests, none of which revealed signs of impairment. Based on all of his observations, the deputy directed Schaefer to take a preliminary breath test (PBT), which revealed an alcohol concentration of 0.087. The deputy arrested Schaefer; subsequent chemical-breath testing showed an alcohol concentration of 0.09.

Respondent State of Minnesota charged Schaefer with fourth-degree DWI. Schaefer moved the district court to suppress the evidence obtained during the traffic stop, arguing that the deputy lacked reasonable suspicion for the initial stop and lacked reasonable suspicion to expand the stop to request a PBT. At the suppression hearing, the state offered the deputy's dash-camera and body-worn-camera videos, and the deputy

2

testified as described above. The deputy also explained that, in his experience, there is a higher incidence of impaired drivers on the roads on weekends between 10:00 p.m. and 3:00 a.m. The district court denied the motion, finding reasonable suspicion supported both the traffic stop and its expansion. Following a stipulated-evidence trial, the district court found Schaefer guilty.

Schaefer appeals.

## DECISION

The United States and Minnesota Constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Our supreme court has adopted the principles and framework of *Terry v. Ohio*, 392 U.S. 1 (1968), when analyzing the reasonableness of a seizure during a traffic stop. *State v. Askerooth*, 681 N.W.2d 353, 363 (Minn. 2004). Under the *Terry* framework, the court first determines whether the traffic stop was justified at its inception by reasonable, articulable suspicion of criminal activity. *Id.* at 364; *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011). Second, the court considers whether the police actions during the stop were "reasonably related to and justified by the circumstances that gave rise to the stop in the first place" or were supported by "independent probable cause or reasonableness to justify [the] particular intrusion." *Askerooth*, 681 N.W.2d at 364.

When reviewing a pretrial order on a motion to suppress evidence, we independently review the facts to determine whether, as a matter of law, the district court erred in suppressing or not suppressing the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn. 1999). In doing so, we review the district court's factual findings for clear error and its

legal determinations de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008); *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000) (noting that reasonable suspicion is a legal question reviewed de novo).

**I.    The traffic stop was valid.**

A traffic stop is justified at its inception if it is based on reasonable, articulable suspicion of criminal activity. *Diede*, 795 N.W.2d at 842. An officer has an "objective basis for stopping [a] vehicle" if they observe a violation of a traffic law, no matter how insignificant. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997). A driver violates a traffic law when they "operat[e] a car with its tires touching the edge of the fog line." *Soucie v. Comm'r of Pub. Safety*, 957 N.W.2d 461, 465 (Minn. App. 2021), *rev. denied* (Minn. June 29, 2021); *see* Minn. Stat. § 169.18, subd. 7(1) (2024) (requiring a vehicle to be driven "as nearly as practicable within a single lane").

Schaefer argues that the district court clearly erred by finding that Schaefer committed a traffic violation. He specifically contends that the district court should not have credited the deputy's testimony that he saw Schaefer's "vehicle just touch the inner part of the fog line" once and, a short time later, "touch the fog line again," because the dash-camera video does not show Schaefer's vehicle ever touching the fog line. He cites *State v. Shellito*, 594 N.W.2d 182, 186 (Minn. App. 1999), for the proposition that we may "make factual findings from [an] independent review" of the deputy's dash-camera video. Schaefer asserts that *Shellito* empowers appellate courts to make factual findings and credibility determinations based on video evidence. We disagree. In *Shellito*, we stated that "the *district court* has the discretion to draw its own conclusions and make factual

4

findings from its independent review of a video recording of a traffic stop." *Id.* (emphasis added). We decline Schaefer's invitation to engage in fact-finding on appeal.

As noted above, the deputy testified that he saw Schaefer's vehicle touch the fog line two times. When asked to review the dash-camera video, the deputy first indicated that he could not see when Schaefer's vehicle touched the fog line. But after reviewing the video several times—including slowed down to a second-by-second format—the deputy confirmed his testimony. He explained that the angle of the video recording made it "hard . . . to tell," but he ultimately identified the two points in the video that show the vehicle touching the fog line. While Schaefer may view the video evidence and the deputy's testimony differently, it was for the district court to weigh the evidence and assess its credibility. *See State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012) (noting that we defer to a district court's determination of a witness's credibility). The district court did so, finding that Schaefer's vehicle touched the fog line at least once. On this record, we discern no clear error in the district court's finding that Schaefer's vehicle touched the fog line at least once, creating the requisite reasonable suspicion for the traffic stop.

II. **Reasonable, articulable suspicion of criminal activity supports expanding the traffic stop to request a PBT.**

A valid traffic stop may be expanded to include investigation of other suspected illegal activity, but "only if the officer has reasonable, articulable suspicion of such other illegal activity." *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002). Whether reasonable suspicion supports expanding a traffic stop turns on the totality of the circumstances. *State v. Taylor*, 965 N.W.2d 747, 752 (Minn. 2021). These circumstances

include "the officer's experience, general knowledge, and observations; background information, including the nature of the offense suspected and the time and location of the seizure; and anything else that is relevant." *Klamar*, 823 N.W.2d at 691.

Schaefer contends that the deputy's request that he submit to a PBT impermissibly expanded the traffic stop.[1] He acknowledges that his driving conduct, the time of day, the odor of alcohol on his breath, and his admission to drinking are indicators of impairment. But he argues they are weak indicators of impairment. Schaefer maintains that the deputy's testimony about his eyes and speech should be disregarded because the body-worn-camera video does not support it. And he asserts that his performance on five of the six field sobriety tests is a strong indicator "of non-impairment that erased any suspicion" of impairment raised by the HGN test results. We are not persuaded to reverse for two reasons.

First, Schaefer focuses on individual circumstances to argue that, because those particular circumstances are weak indicators of impairment, the totality of the circumstances does not suggest impairment. This argument misconstrues our analysis. Rather than viewing each circumstance in isolation, we "focus only on whether the *combination* of the objective, particularized facts and any resulting rational inferences warranted a reasonable, articulable suspicion that justified expansion of the stop." *Taylor*, 965 N.W.2d at 753.

---

[1] Schaefer does not argue that the deputy impermissibly expanded the stop by administering field sobriety tests.

Second, consideration of the circumstances in their totality reveals ample support for the PBT. At the time the deputy administered the PBT, the circumstances included: Schaefer's commission of at least one lane-keeping violation; the violation occurred on a day and time when it is common to find impaired drivers on the road; Schaefer admitted consuming four or five alcoholic beverages earlier in the evening; the deputy detected the odor of alcohol coming from Schaefer; Schaefer's eyes were bloodshot and watery, his eyelids were drooping, and his speech was slurred; the deputy observed six clues of impairment on the HGN test;[2] and the other field sobriety tests did not show clues of impairment. Viewing these circumstances as a whole, we easily conclude that they support a "rational inference" that Schaefer was impaired, supporting the expansion of the stop to include a PBT. Indeed, we have consistently concluded that the expansion of a traffic stop is valid under circumstances like those here. *See, e.g.*, *Taylor*, 965 N.W.2d at 757 (holding that the defendant's canceled driver's license, open case of beer in his truck, placement of the open case, and missing cans of beer "clear[ed] the low hurdle of reasonable suspicion"); *Mesenburg*, 969 N.W.2d at 648-49 (holding that an observed traffic violation, the odor of

---

[2] Schaefer argues that the HGN test revealed only *two* clues of impairment, pointing to the deputy's testimony that he may have administered the test at a higher-than-recommended speed. This argument is unavailing. The deputy testified that even if he did not administer the test in a standardized manner, it did not change the fact that he observed nystagmus. The district court found the deputy's testimony that he observed all six HGN clues credible. And, even without the HGN evidence, the totality of the circumstances still supports the deputy's reasonable suspicion that Schaefer was impaired. *See Mesenburg v. Comm'r of Pub. Safety*, 969 N.W.2d 642, 648-49 (Minn. App. 2021), *rev. denied* (Minn. Mar. 15, 2022) (holding that an observed traffic violation, the odor of alcohol on the defendant's breath, and the defendant's dishonesty about drinking supported the trooper's request for a PBT, even after the defendant successfully completed field sobriety tests).

alcohol on the defendant's breath, and the defendant's dishonesty about drinking supported the trooper's request for a PBT, even after the defendant successfully completed field sobriety tests); *Klamar*, 823 N.W.2d at 696 (holding that an odor of alcohol and bloodshot and watery eyes justified expansion of the traffic stop to investigate suspicion of impaired driving).

In sum, the record supports the district court's findings of fact, and we discern no error in the court's determination that reasonable suspicion supported the PBT. Because the traffic stop was valid and the officer permissibly expanded it based on reasonable suspicion that Schaefer was impaired, we conclude that the district court did not err by denying Schaefer's suppression motion.

**Affirmed.**

8