STATE of Minnesota, Appellant,

v.

Phillip Alan SHELLITO, Respondent.

No. C0–98–1619.

Court of Appeals of Minnesota.

April 13, 1999.

Michael A. Hatch, Minnesota Attorney General, St. Paul and Jennifer A. Fahey, Mille Lacs County Attorney, John H. Wenker, Assistant County Attorney, Milaca (for appellant).

Michael F. Cromett, McMahon & Cromett, PLLP, Roseville (for respondent).

Considered and decided by CRIPPEN, Presiding Judge, AMUNDSON, Judge, and ANDERSON, Judge.

## OPINION

AMUNDSON, Judge.

Appellant challenges the district court's pretrial order granting respondent Phillip A. Shellito's motion to suppress the evidence of a pipe bomb found in the trunk of his automobile and the resulting dismissal of the charges. We affirm in part, reverse in part, and remand.

## FACTS

On April 8, 1998, at approximately 7:46 p.m., Princeton Police Officer Todd Frederick stopped respondent Phillip A. Shellito's vehicle for a speeding violation. When Officer Frederick activated his lights to effect the stop, a video recorder, mounted in the squad car, began to record the traffic stop. The videotape of the stop was admitted into evidence at the omnibus hearing and was viewed by the court. Additionally, Officer Frederick testified at the hearing.

Officer Frederick testified that as he first approached Shellito's vehicle he noticed that the passenger of the vehicle, later identified as David May, was moving his hands in a downward direction and his head was bobbing. Officer Frederick stated that, in his experience, it is not unusual

for the driver to be moving around, but that he grows concerned when a passenger is moving around. He further testified that during the initial conversation with Shellito and May, May appeared extremely nervous and avoided eye contact with Officer Frederick. After determining that Shellito's license was valid and that May's license had been revoked, Officer Frederick asked Shellito to step out of the car and questioned Shellito at the back of the car about why May was acting so nervous. Shellito explained that it was May's typical demeanor. Officer Frederick also questioned Shellito and May separately about their destination at the time of the stop, receiving slightly different stories from both men.

Officer Frederick testified that his suspicions had been raised by the differing stories and so he asked Shellito for permission to look through his vehicle. After several requests and some hedging by Shellito, Shellito told Officer Frederick that he thought the search of his vehicle would be okay. Shellito signed a consent form presented to him by Officer Frederick. Officer Frederick then searched Shellito's vehicle and discovered a glass tube cylinder and a propane torch between the driver's and front passenger's seat. He then searched the trunk of Shellito's vehicle. There, Officer Frederick discovered a fuse dangling down from a pair of pants. Officer Frederick summoned Sergeant Brian Payne, who had arrived as backup, for a closer look and together they determined that the device was a pipe bomb. Shellito and May were arrested and the Minneapolis Bomb Squad was called to defuse the bomb.

On April 10, 1998, Shellito was charged with the following three felonies: (1) Prohibited Possession of Explosive or Incendiary Device in violation of Minn.Stat. § 609.668, subds. 2(b) and 6(a) (1998); (2) Prohibited Transport of an Explosive or Incendiary Device in violation of Minn. Stat. § 609.668, subds. 4(a) and 6(a) (1998); and (3) Unauthorized Possession of Explo-

sives in violation of Minn.Stat. § 299F.19 and 299F.80, subd. 1 (1998).

At a contested omnibus hearing, Shellito moved for the suppression of the pipe bomb, arguing that it was discovered as a result of an unlawful search and seizure. Shellito also moved for dismissal of the charges against him. The district court granted Shellito's motion to suppress and dismissed all charges against him. The state now seeks reversal of the suppression order, arguing that the district court erred in suppressing the evidence of the pipe bomb, which has had a critical impact on the state's case.

## ISSUES

I. Did the district court err in suppressing the evidence seized during a traffic stop, finding that because Shellito's detention continued beyond that reasonably necessary to effectuate the purpose of the stop, it amounted to an unlawful seizure?

II. Did the district court err in its failure to consider whether Shellito gave his voluntary consent to the search of his automobile during the traffic stop?

## ANALYSIS

### Standard of Review

■■■ To prevail on a pretrial appeal from an order suppressing evidence in a criminal prosecution, the state must establish

'clearly and unequivocally that the trial court has erred in its judgment and that, unless reversed, the error will have a critical impact on the outcome of the trial.' However, when reviewing a pretrial order suppressing evidence where the facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed.

*State v. Othoudt,* 482 N.W.2d 218, 221 (Minn.1992) (quoting *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977)).

Because the district court dismissed the charges against Shellito, it is undisputed that the district court's order has had a critical impact on the prosecution of Shellito's charged crimes. Therefore, our primary focus is on whether the state has clearly and unequivocally demonstrated that the district court erred in its decision to suppress the evidence of the pipe bomb.

## I. Length of Detention

In suppressing the evidence, the district court found that Shellito's detention continued beyond the point necessary to effectuate the purpose of the traffic stop where "Frederick lacked a particularized and objective basis for suspecting Defendant and/or May of criminal activity to justify their continued detention." The district court also found that, because a reasonable person in Shellito's position would not have felt free to terminate the encounter, the continued detention of Shellito resulted in an unlawful seizure. Thus, the district court suppressed the evidence because it was discovered as a result of an unlawful seizure. We conclude that state did not clearly and unequivocally demonstrate that the district court erred in making this determination.

■ The district court's function at a pretrial hearing on suppression issues is to make factual findings. *City of W. St. Paul v. Smith,* 404 N.W.2d 16, 18 (Minn.App. 1987). These findings make it possible for the reviewing court to ascertain the basis for the district court's ruling. *State v. Morgan,* 296 N.W.2d 397, 401 (Minn.1980).

■ In its analysis, the district court first determined that the initial stop of Shellito's vehicle was reasonable, recognizing that Officer Frederick observed Shellito going 42 m.p.h. in a 30 m.p.h. zone. Because an officer's observation of a traffic violation does provide an objective basis to support a traffic stop, the district court correctly concluded that Officer Frederick's observation of Shellito's traffic violation provided him with a lawful basis for the initial stop of Shellito. *State v. George,* 557 N.W.2d 575, 578 (Minn.1997). Having determined that the stop was reasonable, the district court went on to determine whether the continued detention of Shellito, after the license check and ticketing, exceeded the lawful bounds of the traffic stop.

■ A police officer may temporarily seize a person to investigate if the officer reasonably suspects that person of criminal activity. *State v. Cripps,* 533 N.W.2d 388, 391 (Minn.1995). To be considered reasonable, an officer's suspicion must be based on specific, articulable facts. *Id.* The officer's assessment may be based on all the circumstances and the officer may draw inferences and deductions that might elude an untrained person. *Berge v. Commissioner of Pub. Safety,* 374 N.W.2d 730, 732 (Minn.1985). Nevertheless, the officer must be able to point to objective facts and may not base his or her conclusion on a mere "hunch." *Cripps,* 533 N.W.2d at 391–92.

■ In making its findings, the district court was presented with conflicting evidence in the form of Officer Frederick's testimony and the video recording of the stop, viewed by the district court at the time of the pre-trial hearing. Officer Frederick testified that, as he approached Shellito's vehicle, he observed May's head bob and his hands reaching in a downward motion. Furthermore, Officer Frederick testified that May appeared extremely nervous when talking to him and that he avoided eye contact. For these reasons, Officer Frederick became suspicious that May and Shellito might be involved in criminal activity.

■ In its findings, however, the district court discounted Officer Frederick's testimony, stating:

> The video tape indicates that one of the occupants of the vehicle moved his hands, but it is unclear whether such

movement was that of the driver or the passenger. The movement in question involved little or no head movement * * * Even if the movement was made by May, such movement is not the type of evasive or furtive movement that suggest the occupants of the vehicle were engaged in criminal activity.

Even if May's movement in the vehicle provided a particularized and objective basis for suspecting Defendant and May of criminal activity, May's response to Officer Frederick's questions were quick, crisp, appropriate and non-evasive. The tape does not indicate any nervousness in May's voice.

(Citation omitted.) We hold that the district court has the discretion to draw its own conclusions and make factual findings from its independent review of a video recording of a traffic stop. Here, the district court heard the testimony of Officer Frederick and viewed the video recording of the incident. Based on its viewing of the video recording, the district court discounted much of Officer Frederick's testimony. Where there is conflicting evidence, the district court must make findings of fact. Moreover,

[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn. R. Civ. P. 52.01. We find that there is ample evidence in the record to support the district court's finding that the continued detention of Shellito was not based on a reasonable, articulable suspicion of criminal activity. Rather, it appears to have been based on nothing more than a mere "hunch."

■■■■ The district court correctly held that a detention may continue only so long "as reasonably necessary to effectuate the purpose of the stop." *State v. Bell,* 557 N.W.2d 603, 606 (Minn.App.1996), *review denied* (Minn.Mar. 18, 1997) (citations omitted). When the original suspicion jus-

tifying the stop was dispelled, as the district court determined here, a police officer may not continue to search an automobile driver unless there is additional suspicion remaining. *See State v. Hickman,* 491 N.W.2d 673, 675 (Minn.App.1992), *review denied* (Minn.Dec. 15, 1992) (suppressing evidence obtained after original suspicion was dispelled and when no articulable suspicion of revoked license existed).

We cannot say that the district court clearly and unequivocally erred in its determination that Officer Frederick unlawfully detained Shellito after the check of his license or in its suppression of the evidence found during Shellito's illegal seizure.

## II. Consent to Search

■■■■ The state also argues that, because Shellito voluntarily consented to the search of his vehicle, the district court improperly suppressed the evidence of the pipe bomb. The district court never directly addressed the consent issue, holding that, because the consent was given after the unlawful detention, any evidence found as a result of the search must be suppressed under the "fruits-of-the-poisonous-tree" doctrine. We conclude that the district court erred in its failure to address the consent issue.

■■■■ We agree that consent may be tainted by an unlawful seizure and become ineffective to justify a search. *See Florida v. Royer,* 460 U.S. 491, 507–08, 103 S.Ct. 1319, 1329, 75 L.Ed.2d 229 (1983) (stating that because the defendant was being illegally detained when he consented to the search of his luggage, the consent was "tainted by the illegality" and thus, was ineffective to justify the search). But we have previously held that where an illegal stop is involved, consent may still be valid if the consent was "manifestly voluntary." *State v. Blacksten,* 489 N.W.2d 252, 255 (Minn.App.1992), *aff'd in part, rev'd in part on other grounds,* 507 N.W.2d 842, 847 (Minn.1993). On appeal from this court in *Blacksten,* the supreme court re-

versed our remand to the district court for a consideration of the voluntary nature of the consent. *Blacksten,* at 847. In *Blacksten,* the supreme court held that although consent is a "credibility issue" to be determined by the district court, the district court had already found that the consent was involuntary in its pretrial order and thus, a remand to the district court was unnecessary.

Here, the district court never addressed the issue of whether Shellito's consent to the search of his vehicle was "manifestly voluntary." Therefore, we must remand to the district court for findings on whether Shellito's consent was "manifestly voluntary."

## DECISION

The initial stop of Shellito's vehicle for a traffic violation was permissible. Thereafter, Officer Frederick was free to detain Shellito long enough to perform a license check and to ticket him. After that point, Officer Frederick did not have sufficient independent suspicion of criminal activity to continue Shellito's detention. The state has failed to show clearly and unequivocally that the district court erred in finding that the continued detention constituted an unlawful seizure. The district court, however, should have considered whether Shellito voluntarily consented to the search of his vehicle, and we remand for findings on this issue.

**Affirmed in part, reversed in part, and remanded.**