*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1595**

Mitchell Frank Mack, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed May 26, 2015
Affirmed
Chutich, Judge
Dissenting, Cleary, Chief Judge**

Polk County District Court
File No. 60-CV-13-1824

Lee M. Orwig, Douglas V. Hazelton, Halberg Criminal Defense, Bloomington, Minnesota (for appellant)

Lori Swanson, Attorney General, Elizabeth Oji, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Chutich, Judge; and Toussaint, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Mitchell Mack challenges a district court order sustaining his license revocation under the implied-consent law, arguing that no reasonable, articulable suspicion supported the initial stop of his truck. He further claims that any reasonable, articulable suspicion that he was driving while impaired was dispelled before the officer expanded the scope of the stop by requesting a preliminary breath test. Because reasonable, articulable suspicion existed throughout the officer's investigation, we affirm.

## FACTS

At 2:00 a.m. on August 25, 2013, Sergeant Mike Anderson observed a pickup truck turn off a seldom-used gravel road in front of his patrol car. The truck kicked up dust behind it, which caused Sergeant Anderson to believe that it had turned at a high rate of speed. Sergeant Anderson pulled the truck over after he saw it swerve once and then cross the fog line three times.

Sergeant Anderson identified the driver as appellant Mitchell Mack. Two passengers were also in the truck. Sergeant Anderson could smell a strong odor of alcohol coming from the truck and asked Mack if he had been drinking. Mack said that he had not. Mack also said that he did not know of any open alcohol containers in the truck.

Sergeant Anderson noticed a whiskey bottle and several beer cans in the truck cab. The three eventually told Sergeant Anderson that they had gone to Grand Forks to watch races, but the races were rained out so instead they drank in the truck. Mack then

conceded that he had been drinking earlier in the evening. Sergeant Anderson did not notice any slurred speech from Mack but told Mack that he would get a ticket for allowing open containers in the truck. Sergeant Anderson directed the passengers to put the bottle and cans in a bag and then place the bag in the truck bed. He took IDs from all three persons to check for warrants. As he approached his squad car, Sergeant Anderson privately told another officer who had arrived that he was not going to ticket any of the three but that he was just going to scare them and "kick them loose."

When Sergeant Anderson ran Mack's license through his computer, he learned that Mack, who was then 21 years old, had previously been arrested for driving while impaired. Sergeant Anderson returned to the truck to give Mack a preliminary breath test, but Mack blocked the straw with his tongue, forcing Sergeant Anderson to capture a manual sample. This sample registered an alcohol concentration of .10.

Sergeant Anderson then had Mack perform field sobriety tests. Mack showed five clues of impairment in the horizontal gaze nystagmus test. Sergeant Anderson gave Mack another preliminary breath test, and this properly captured sample registered an alcohol concentration of .139. Sergeant Anderson arrested Mack for driving while impaired, and Mack's driving privileges were revoked under the implied-consent law.

In September 2013, Mack filed a petition for judicial review of the license revocation. The district court held a hearing in April 2014 and sustained the revocation. Mack appealed.

**D E C I S I O N**

## I.     Stop of the Truck

Mack first argues that the district court clearly erred in finding that Sergeant Anderson had a valid reason for stopping Mack, claiming that the squad car video shows that he did not cross the fog line. The commissioner counters, and we agree, that the district court's findings are not clearly erroneous.

This court reviews a district court's determination regarding the legality of an investigatory traffic stop and reasonable suspicion de novo. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010). Findings of fact are reviewed for clear error, and due weight is given to the inferences drawn from those facts by the district court. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). A finding of fact is clearly erroneous only when the court is left with the "definite and firm conviction that a mistake has been committed." *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002) (quotation omitted).

A traffic stop is permissible if "the officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." *State v. Anderson*, 683 N.W.2d 818, 822-23 (Minn. 2004) (quotation omitted). Generally, the observation of any traffic violation—no matter how insignificant—sufficiently supports a particularized and objective basis for the stop. *Id.* at 823. Minnesota law requires a car to be driven within a single lane of traffic. Minn. Stat. § 169.18, subd. 7(a) (2014). Crossing a traffic line, or even swerving within a driver's own lane, provides reasonable, articulable suspicion to

4

justify a traffic stop. *See State v. Wagner*, 637 N.W.2d 330, 336 (Minn. App. 2001); *State v. Dalos*, 635 N.W.2d 94, 96 (Minn. App. 2001).

The district court heard testimony from Sergeant Anderson in which he testified that Mack crossed over the fog line "on a few different occasions." The district court also viewed the squad car footage and stated that the "quality and clarity of the recording made it difficult to determine whether [Mack] crossed the fog line." The district court credited Sergeant Anderson's testimony and found that the truck crossed the fog line on more than one occasion.

Mack claims that review of the squad car video shows that the truck did not cross the fog line, thereby discrediting Sergeant Anderson's testimony and showing that the district court's finding was clearly erroneous. But as the district court noted, the quality of the video makes it difficult to determine if Mack crossed the fog line. Because the video lacks clarity, Mack cannot establish that the district court's finding is clearly erroneous. A district court has discretion to make factual findings based on testimony and review of a video. *State v. Shellito*, 594 N.W.2d 182, 186 (Minn. App. 1999). Where the two conflict, a district court must make factual findings, and we defer to the district court's credibility determinations. *Id.* The district court credited the testimony of Sergeant Anderson, and our review of the video does not give rise to a definite and firm conviction that a mistake was made.

## II.    Expansion of the Scope of Search

Mack next asserts that the district court erred by ruling that Sergeant Anderson validly expanded the scope and duration of the stop. The commissioner contends that the

totality of the circumstances supports an objective finding of reasonable, articulable suspicion that Mack was driving while impaired. We agree.

The scope and duration of an investigatory traffic stop must be limited to the justification for the stop. *State v. Fort*, 660 N.W.2d 416, 418 (Minn. 2003). But an officer may expand the scope of a stop beyond the initial justification if the officer has independent, reasonable, and articulable suspicion of other criminal activity. *State v. Burbach*, 706 N.W.2d 484, 488 (Minn. 2005). Similarly, a police officer may request a preliminary breath test if the officer possesses "specific and articulable facts" that lead the officer to believe that a person has been driving while intoxicated. *State, Dept. of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn. 1981); *see also* Minn. Stat. § 169A.41, subd. 1 (2014) (stating that a preliminary screening test may be given when an "officer has reason to believe" that a person is driving while impaired); *State v. Vievering*, 383 N.W.2d 729, 730 (Minn. App. 1986) (noting that administering a preliminary breath test does not require probable cause), *review denied* (Minn. May 16, 1986). Reasonable, articulable suspicion is an objective standard determined by the totality of the circumstances. *Paulson v. Comm'r of Pub. Safety*, 384 N.W.2d 244, 246 (Minn. App. 1986). We review whether reasonable, articulable suspicion existed de novo. *Burbach*, 706 N.W.2d at 487.

Mack argues that Sergeant Anderson improperly expanded the scope of the stop by giving him a preliminary breath test after he no longer suspected that Mack was driving while impaired. Mack claims that the video demonstrates that Sergeant Anderson no longer believed that Mack was driving while impaired, including Sergeant Anderson's

6

statements to Mack that he could not smell alcohol on Mack and, "No one's drunk and I'm happy about that." Mack additionally points to several statements that Sergeant Anderson made to another officer, including that "the driver hasn't been drinking at all," "I'm just going to run them and kick them loose," and "I'm just going to scare . . . them and send them down the road." Mack asserts that these statements show that Sergeant Anderson's initial suspicion was dispelled, and he only decided to give Mack a preliminary breath test once he learned that Mack had a previous driving while impaired conviction.

The video does not conclusively show that Sergeant Anderson's suspicion was dispelled, however. His statements, questions, and actions show that he was continuing to investigate the initial reason for which he pulled Mack over until he ultimately administered the preliminary breath test. And even if Sergeant Anderson *subjectively* believed that Mack was not intoxicated, an officer's subjective beliefs are generally irrelevant when analyzing the validity of a search. *See, e.g.*, *State v. Everett*, 472 N.W.2d 864, 867 (Minn. 1991). Reviewing the totality of the circumstances under the proper *objective* standard, reasonable, articulable suspicion that Mack was driving while impaired existed, and therefore Sergeant Anderson could request a preliminary breath test.

Sergeant Anderson initially stopped Mack for swerving and crossing the fog line three times. This reason, coupled with the late hour, would support reasonable, articulable suspicion of impaired driving. *See Dalos*, 635 N.W.2d at 95-96. Once Sergeant Anderson made contact with Mack, he smelled a strong odor of alcohol in the

7

truck and saw that Mack's eyes were watery. Mack admitted, after first denying it, that he drank earlier in the night. And Sergeant Anderson found open alcohol containers in the truck, including a bottle of whiskey. These circumstances provided an objective basis to conclude that reasonable, articulable suspicion existed for a preliminary breath test to be given. *See, e.g.*, *State v. Klamar*, 823 N.W.2d 687, 696 (Minn. App. 2012) (stating that two indicia of intoxication provided reasonable, articulable suspicion for a preliminary breath test); *State v. Lopez*, 631 N.W.2d 810, 814 (Minn. App. 2001) (holding that an odor of alcohol provides a lawful basis to continue a detention), *review denied* (Minn. Sept. 25, 2001).

To be sure, the video shows that Sergeant Anderson did not say out loud that he was going to give Mack a preliminary breath test until after he learned of Mack's earlier charge.[2] But a preliminary breath test may be given even when an officer is unsure whether a driver is under the influence of alcohol. *Marben v. State, Dept. of Pub. Safety*, 294 N.W.2d 697, 700 (Minn. 1980). Indeed, Sergeant Anderson testified that he planned on giving Mack a preliminary breath test before he learned of Mack's previous driving-while-impaired charge, and the district court found this testimony to be credible.

In addition to these circumstances, Sergeant Anderson also learned that Mack, who was only 21 years old at that time, was previously arrested for driving while impaired. We agree with Mack that this fact, standing alone, would not support reasonable, articulable suspicion. *See State v. Henning*, 666 N.W.2d 379, 385-86 (Minn.

---

[2] Sergeant Anderson testified that he made the statement about giving Mack a preliminary breath test to a ride-along student in his patrol car to inform the student what he was thinking.

2003) (holding that mere presence of special license plates issued under Minnesota Statutes section 169A.60 does not support reasonable, articulable suspicion); *cf. State v. Carter*, 697 N.W.2d 199, 205 (Minn. 2005) (stating that a criminal record cannot form the sole basis for probable cause). But we do not agree that this fact, once known to Sergeant Anderson, cannot be considered with the many other facts giving rise to reasonable, articulable suspicion that Mack was driving under the influence of alcohol. After stopping Mack for crossing the fog line at 2:00 a.m., smelling alcohol, noticing a whiskey bottle and beer cans, and being lied to by Mack about whether he had been drinking, Mack's earlier conviction for driving while impaired was but one more fact for Sergeant Anderson to consider in deciding to test Mack. And given these circumstances, Sergeant Anderson would have been remiss had he not ensured that Mack could safely drive before he allowed him to continue on his way. In sum, the totality of the circumstances demonstrates that Sergeant Anderson had objective, reasonable, and articulable suspicion to request that Mack take a preliminary breath test.

Mack also argued in his brief that the warrantless search of his breath was unconstitutional and that the implied consent advisory violated his due-process rights. At oral argument, however, he conceded that these issues are without merit following *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015).

**Affirmed.**

**CLEARY**, Chief Judge (dissenting)

I agree with the majority that the district court was not clearly erroneous in ruling that the stop of appellant's truck was valid. I respectfully dissent only as it regards the remaining issue: whether the officer illegally expanded the scope of the stop. I believe that the officer's reasonable suspicion for stopping appellant was dispelled after his conversation with appellant, as the officer's own statements confirm. The only reason the officer had for requiring appellant to provide a breath sample for a preliminary screening test was his belated discovery of a prior conviction for driving while impaired. This is an insufficient basis under the applicable statute.

The statute regarding preliminary breath tests (PBT) provides:

> When a peace officer has **reason to believe from the manner in which a person is driving, operating, controlling, or acting upon departure from a motor vehicle, or has driven, operated, or controlled a motor vehicle,** that the driver may be violating or has violated [169A.20, 169A.31, or 169A.33], the officer may require the driver to provide a sample of the driver's breath for a preliminary screening test . . .

Minn. Stat. § 169A.41, subd. 1 (2014) (emphasis added).

Here, the "reason to believe" appellant might be impaired was not "the manner" in which appellant had been driving but the fact that he had been convicted before for driving while impaired. This basis for requiring a breath sample is not authorized under the statute.

As the majority notes, a police officer can request a preliminary breath test if the officer has a "specific and articulable suspicion" that a suspect was driving while

D-1

impaired.  *State, Dep't of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn. 1981); *see also* Minn. Stat. § 169A.41, subd. 1 (describing when police can give a PBT).  We determine the existence of a reasonable, articulable suspicion objectively under the totality of the circumstances.  *Paulson v. Comm'r of Pub. Safety*, 384 N.W.2d 244, 246 (Minn. App. 1986).  However, the constitutionality of the initial stop does not establish the constitutionality of a later intrusion.  *State v. Hickman*, 491 N.W.2d 673, 675 (Minn. App. 1992), *review denied* (Minn. Dec. 15, 1992).  An officer's reasonable, articulable suspicion can be dispelled by subsequent information.  *Id.*  When the suspicion is dispelled, "[t]he legal test for continuing detention is the same as that for the initial stop." *State v. Lopez*, 631 N.W.2d 810, 814 (Minn. App. 2001), *review denied* (Minn. Sept. 25, 2001).

In this case, even assuming that the officer had a reasonable suspicion justifying the stop, those suspicions were dispelled after his interaction with appellant. Consider: (1) the officer stated that he did not smell any alcohol on appellant; (2) appellant did not have slurred speech; (3) the officer told appellant that no one was drunk and he was happy about that; (4) the officer told appellant that he was getting a ticket for open container; (5) the officer told another officer that he was going to "scare" them and then "send them down the road" and let appellant and his passengers go without a ticket after running them for warrants; and (6) the officer stated that he did not believe that appellant had been drinking at all.  An objective examination of the totality of the circumstances, as described by the officer who stopped the vehicle, demonstrates that

there was no reasonable, articulable suspicion to believe that appellant was driving while impaired.

Once the officer dispelled any reasonable suspicion, he was required to reestablish reasonable suspicion that appellant was driving while impaired to make a subsequent search. *See Hickman*, 491 N.W.2d at 675. The officer ran appellant's information to check for warrants, revealing that appellant had a prior driving while impaired conviction. After discovering this information, the officer stated that he was going to give appellant a PBT. A prior violation does not give the police a reasonable, articulable suspicion that a driver was driving while impaired. *See State v. Henning*, 666 N.W.2d 379, 385-86 (Minn. 2003) (holding that police could not pull over a vehicle based solely on special plates indicating that one of the vehicle's owners had driven while impaired).

In requesting that appellant provide a breath sample pursuant to Minn. Stat. § 169A.41, subd. 1, the officer illegally expanded the scope and duration of the initial stop. Consequently, the district court order should be reversed and the revocation of appellant's driver's license should be rescinded.