*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0971**

State of Minnesota,
Respondent,

vs.

Anthony Lee Prellwitz,
Appellant.

**Filed June 24, 2024
Affirmed in part, reversed in part, and remanded
Gaïtas, Judge**

Wilkin County District Court
File Nos. 84-CR-21-500, 84-CR-22-270

Keith Ellison, Attorney General, Peter Magnuson, Assistant Attorney General, St. Paul, Minnesota; and

Tegan Peterson, Wilkin County Attorney, Breckenridge, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, John Donovan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Gaïtas, Judge; and Larson, Judge.

**NONPRECEDENTIAL OPINION**

**GAÏTAS**, Judge

In this direct appeal, appellant Anthony Lee Prellwitz challenges his convictions in two cases following two jury trials: a conviction for possession of a controlled substance in file number 84-CR-21-500 (the drug-possession case) and convictions for unlawful

possession of a firearm, unlawful possession of ammunition, and possession of a firearm with an altered serial number in file number 84-CR-22-270 (the gun case). Prellwitz argues that his drug-possession conviction must be reversed because he was denied his constitutional right to a speedy trial. He contends that his convictions in the gun case must be reversed because he did not validly waive counsel in that matter. In a pro se supplemental brief, Prellwitz raises several additional challenges to his convictions. Because there was no speedy-trial violation and the issues in Prellwitz's pro se supplemental brief do not warrant relief, we affirm Prellwitz's drug-possession conviction. But because Prellwitz did not waive his right to be represented by counsel in the gun case, we reverse his convictions in that case and remand.

**FACTS**

A December 2021 traffic stop led to Prellwitz's drug-possession case. Prellwitz was arrested for driving with a canceled driver's license. During a pat-down search, the arresting officer discovered over 10 grams of methamphetamine. Respondent State of Minnesota charged Prellwitz with third-degree possession of a controlled substance and driving after cancellation.

A series of hearings before the district court followed. Prellwitz appeared for hearings in the drug-possession case and other preexisting criminal cases on January 11, February 1, and February 28, 2022.

On March 14, Prellwitz pleaded not guilty in the drug-possession case and waived an omnibus hearing. Four days later, he appeared at a scheduling hearing for multiple cases

2

and demanded a speedy trial on all of his cases. The district court scheduled a trial for the drug-possession case for May 2022.

Prellwitz appeared before the district court for a pretrial hearing in the drug-possession case on April 11. He asked to discharge his attorney and represent himself. The district court determined that Prellwitz understood the significance of his decision to waive counsel and discharged Prellwitz's attorney. Prellwitz asked to reopen the omnibus hearing, which he had previously waived, to challenge the constitutionality of the police officer's actions during the traffic stop. The district court scheduled a contested omnibus hearing for later in April and continued the pretrial hearing from April to May.

The parties appeared for the omnibus hearing on April 25. However, Prellwitz failed to file a suppression motion before the hearing to identify his constitutional challenges, and the state's witnesses were unavailable. Prellwitz withdrew his speedy-trial demand, and the district court advised him that the May trial date would be continued.

Four days later, Prellwitz filed another speedy-trial demand in the drug-possession case. On the same date, the state moved to continue the contested omnibus hearing again due to witness unavailability. The district court continued the hearing but ordered that it "be set as soon as possible."

On May 3, the district court held two hearings in the drug-possession case. During the first hearing, the parties discussed release conditions and scheduling, and agreed to hold the contested omnibus hearing later that same day. The district court modified Prellwitz's conditions of release so that he could be released from jail. Later in the day—and after

3

Prellwitz was released from jail—the district court presided over the contested omnibus hearing. Following the hearing, the district court denied Prellwitz's suppression motion.

On June 29, Prellwitz failed to appear at a scheduled hearing and the district court issued a warrant for his arrest. Police officers went to Prellwitz's mother's home to arrest him on the warrant. Prellwitz's mother gave the police officers permission to search her home. Police went to the room where Prellwitz stayed and observed a gun. Based on this discovery, and because Prellwitz was prohibited from possessing a firearm, police obtained a search warrant for the home. During their subsequent search, they found additional guns and ammunition. In July 2022, the state initiated the gun case against Prellwitz, charging him with unlawful possession of a firearm, unlawful possession of ammunition, and possession of a firearm with an altered serial number.

On August 8, Prellwitz was arrested. He made an appearance before the district court via remote technology from the jail, but he refused to attend the entire hearing. The district court stated that Prellwitz "left the hearing shortly after it started" and did not return, and it rescheduled the hearing for the next day. But Prellwitz again refused to participate in the hearing. In Prellwitz's absence, the district court set bail and scheduled an omnibus and pretrial hearing for August 23. Prellwitz again refused to participate in the hearing on August 23. The case was continued until September 13, and during that hearing, Prellwitz refused to appear, and the prosecutor urged the court to compel his attendance by force. Instead, the district court ordered a mental-health evaluation pursuant to Minnesota Rule

4

of Criminal Procedure 20.01.[1]  Consistent with the rule, the district court stayed all of Prellwitz's criminal cases pending the evaluation process.

On November 8, the district court held a review hearing on eight separate cases, including the drug-possession case and the gun case.  Prellwitz refused to appear.  Based on the mental-health evaluation, which had been filed a week earlier, the district court found that Prellwitz was competent to proceed.  The district court also noted that, "[t]here is some indication in the examiner's report that he is perhaps trying to stall these proceedings," which was "consistent with what this Court is seeing."  The district court set a hearing for December 14 and ordered law enforcement to physically bring Prellwitz to court for future proceedings.

On December 14, the district court held a pretrial hearing in one of Prellwitz's other criminal matters.  Prellwitz appeared at the hearing.  He argued that his drug-possession case should be dismissed because he had been deprived of a speedy trial.  The district court denied the motion, stating:

> The State has not caused any of the delay in this matter. Rather, five months of delay was caused by Defendant's decision to intentionally fail to attend court hearings.  Prior to his absence, Defendant's delays were caused by his own tactics in firing his public defender, reopening omnibus hearings, and then failing to file paperwork for the omnibus hearings.

---

[1] The criminal rules provide that if there are doubts as to the defendant's competency, the prosecutor or defense counsel "must make a motion challenging competency, or the court on its initiative must raise the issue."  Minn. R. Crim. P. 20.01, subd. 3.  If the district court "determines that reason exists to doubt the defendant's competency," the court must suspend the criminal proceedings until the defendant is evaluated by a court-appointed examiner and the district court finds the defendant competent.  *Id.*, subds. 3-6.

5

It concluded that Prellwitz "failed to establish that his right to speedy trials was violated."

The district court also advised Prellwitz during the December 14 hearing that he had a right to be represented by counsel in the gun case. But the district court noted that Prellwitz had previously fired his public defender in other cases. The prosecutor asked the district court "to confirm if . . . Prellwitz is. . . intending to apply for [a] court-appointed attorney in the [gun case]." The district court responded, "I don't know. I'm not going to worry about it. He knows what he needs to do in order to apply for a public defender. At this point, he is not represented so you need to submit all of the information to him."

On February 1, 2023, the jury trial commenced in Prellwitz's drug-possession case. Prellwitz represented himself at trial. During trial, the state dismissed the driving-after-cancellation charge. The jury found Prellwitz guilty of the only remaining charge, third-degree possession of a controlled substance.

On February 9, the district court held a jury trial in the gun case. Prellwitz again represented himself at trial. The jury found Prellwitz guilty of all three counts.

The district court held a single sentencing hearing for both the drug-possession case and the gun case. It sentenced Prellwitz to 51 months in prison for third-degree possession of a controlled substance, 71 months in prison for unlawful possession of a firearm, and 22 months in prison for possession of a firearm with an altered serial number.

Prellwitz appeals.

6

**DECISION**

**I.    Prellwitz was not denied his constitutional right to a speedy trial in the drug-possession case.**

Prellwitz argues that his drug-possession conviction must be reversed because he was denied his constitutional right to a speedy trial. He contends that, although he repeatedly asserted his speedy-trial right, there was a 13-month delay between charging and his jury trial, which prejudiced him.

The United States and Minnesota Constitutions guarantee a criminal defendant the right to a speedy trial. U.S. Const. amend. VI; Minn. Const. art. I, § 6. "Whether a defendant has been denied a speedy trial is a constitutional question subject to de novo review." *State v. Osorio*, 891 N.W.2d 620, 627 (Minn. 2017).

In *Barker v. Wingo*, the United States Supreme Court articulated four factors for determining whether reversal is warranted for a speedy-trial violation. 407 U.S. 514, 530 (1972). "The test provides that a court must consider: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his or her right to a speedy trial; and (4) whether the delay prejudiced the defendant." *State v. Windish*, 590 N.W.2d 311, 315 (Minn. 1999) (citing *Barker*, 407 U.S. at 530-33). "None of these factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015) (quotation omitted). To determine whether the delay in Prellwitz's case violated his constitutional right to a speedy trial, we consider each *Barker* factor in turn.

7

### *Length of the delay.*

"The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Under Minnesota's criminal procedure rules, "trial is to commence within 60 days from the date of the demand unless good cause is shown why the defendant should not be brought to trial within that period." *State v. Hahn*, 799 N.W.2d 25, 29-30 (Minn. App. 2011) (quotation omitted), *rev. denied* (Minn. Aug. 24, 2011); *see also* Minn. R. Crim. P. 11.09(b) (requiring trial within 60 days of demand "unless the court finds good cause for a later trial date"). And "[i]n Minnesota, delays beyond 60 days from the date of demand raise a presumption that a violation has occurred." *Windish*, 590 N.W.2d at 315-16; *see also State v. Johnson*, 811 N.W.2d 136, 144 (Minn. App. 2012) ("Under Minnesota law, a delay of more than 60 days from the date of the speedy-trial demand is presumptively prejudicial, triggering review of the remaining three factors."), *rev. denied* (Minn. Mar. 28, 2012). Here, the state concedes that the trial began over 60 days from the date of Prellwitz's speedy-trial demand, triggering review of the remaining *Barker* factors.

### *Reason for the delay.*

The "key question" when evaluating the second factor "is whether the government or the criminal defendant is more to blame for the delay." *Taylor*, 869 N.W.2d at 19 (quotation omitted). Generally, the burden of protecting speedy-trial rights rests on the court system and the prosecution. *Windish*, 590 N.W.2d at 317. But "[w]hen the overall delay in bringing a case to trial is the result of the defendant's actions, there is no speedy

8

trial violation." *Taylor*, 869 N.W.2d at 20 (quotation omitted); *see also State v. Ray*, 659 N.W.2d 736, 748 (Minn. 2003) (concluding that there is no violation when "the procedural history of the case makes clear that the delays were the result of [the defendant's actions]").

A reviewing court considers the specific reasons for the delay after determining which party is responsible, then assesses the weight to be accorded against that party based on the reason for the delay. *See Taylor*, 869 N.W.2d at 19-20 (noting that both parties were responsible for a delay but determining that "[b]ecause both continuances were for good cause, this factor weighs against a speedy-trial violation"); *Osorio*, 891 N.W.2d at 632-33 (holding that a delay caused by the state's negligence weighs against the state, but less heavily than if the delay was intentional). Delays caused by reasons such as court congestion are deemed more neutral and are weighed less heavily against the state. *State v. Mikell*, 960 N.W.2d 230, 251 (Minn. 2021). And delays deemed to be for good cause, such as the unavailability of a prosecution witness for unavoidable reasons, are not weighed against the state. *Id.*

The record shows that there were six distinct periods of delay in this case. We discuss each of these periods of delay in turn.

The first delay was due to defense counsel's scheduling conflict. Prellwitz appeared for a hearing on March 14, 2022. With the assistance of his attorney, he entered a not-guilty plea in the drug-possession case and waived an omnibus hearing. Four days later, at a scheduling hearing, Prellwitz—through counsel—demanded a speedy trial in all of his pending cases. The district court scheduled the trial for May 2022, which was within the 60-day deadline. However, defense counsel was unable to appear on the scheduled trial

date, and the district court offered to continue the trial to a later date in May, which was approximately 10 days beyond the speedy-trial deadline. Prellwitz's attorney agreed to this trial date. This first delay was not caused by the state.

Likewise, the second delay—which involved a few continued court proceedings—does not weigh against the state. At the April 11 pretrial hearing, Prellwitz discharged his attorney and moved to reopen the omnibus hearing. The district court granted the request and scheduled a contested omnibus hearing for April 25. But on that date, the circumstances of both parties required another continuance. Prellwitz had failed to file a suppression motion. And the state noted that its witness was unavailable. Prellwitz then withdrew his speedy-trial demand for the drug-possession case. But four days later, he reasserted it. Because the state's witnesses were unavailable for the newly scheduled contested omnibus hearing, the state moved for another continuance—a request that Prellwitz did not oppose. As noted, a delay resulting from the unavailability of a prosecution witness for unavoidable reasons is not weighed against the state. *Mikell*, 960 N.W.2d at 251. Thus, the second period delay, which involved continuances due to witness unavailability and Prellwitz's own failure to file a motion to suppress, does not weigh against the state.

The third delay weighs against Prellwitz. He failed to appear at a hearing on June 29, and the district court issued a warrant for his arrest. Following his arrest, he refused to participate in multiple hearings between August 8 and September 13. Prellwitz acknowledges in his brief that he is responsible for the period of delay from June to August 2022 "when he absconded."

The fourth delay—resulting from the mental-health evaluation that the district court ordered when Prellwitz refused to appear in court—was not the result of the state's conduct. After the district court ordered the evaluation, all proceedings were suspended for a few months. A delay caused by incompetency proceedings is typically justified as necessary to protect the defendant's right to a fair trial. *State v. Bauer*, 299 N.W.2d 493, 498 (Minn. 1980). This delay was not attributable to the state.

The fifth delay, which occurred between November and December 2022, was again based on Prellwitz's refusal to participate in court proceedings after he was found to be competent. This delay does not weigh against the state.

Finally, the sixth delay occurred between December 14, when Prellwitz began attending court appearances again, and the beginning of his jury trial in the drug-possession case on February 1. This delay was largely attributable to court congestion caused by Prellwitz's own criminal matters. Although the state proposed having the trial in the drug-possession case first, the district court opted to proceed with one of Prellwitz's older and more serious cases. Delays caused by court congestion generally are neutral and are weighed less heavily against the state. *Mikell*, 960 N.W.2d at 251. Because the final delay in bringing Prellwitz to trial in the drug-possession case stemmed from court congestion caused by Prellwitz's own cases, it does not weigh against the state.

Based on our review of the record, we determine that each of the six delays in Prellwitz's drug possession case was either neutral or attributable to Prellwitz or defense counsel. Moreover, there is no indication that the state engaged in bad-faith tactics. Given these circumstances, the reason for the delays does not support a speedy-trial violation.

11

***Assertion of the speedy-trial right.***

A defendant's assertion of the speedy-trial right "is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. "These assertions, however, must be viewed in the light of [the defendant's] other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). When "speedy-trial demands are accompanied by actions that undermine the ability for the trial to occur," the assertions are given less weight. *State v. Paige*, 977 N.W.2d 829, 841 (Minn. 2022); *see also Loud Hawk*, 474 U.S. at 314-15 (stating that a defendant who repeatedly filed frivolous petitions and motions delaying his trial undermined the seriousness of his speedy-trial demand).

Although Prellwitz asserted his right to a speedy trial a few times, his conduct undermined the seriousness of the demand. After asserting his speedy-trial right, Prellwitz engaged in conduct that delayed the proceedings. While representing himself, he failed to timely file a suppression motion to give the state notice of the issues for his contested omnibus hearing. He absconded. And he refused to appear in court, missing multiple court appearances over a period of months. Given these circumstances, we give Prellwitz's assertion of his speedy-trial right less weight.

***Prejudice caused by the delay.***

The fourth *Barker* factor considers the prejudice to the defendant from the delay. "Prejudice . . . should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect," namely "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the

possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "Of these forms of prejudice, the most serious is the last, because the inability of a defendant [to] adequately . . . prepare his case skews the fairness of the entire system." *Doggett v. United States*, 505 U.S. 647, 654 (1992) (quotation omitted).

The first two interests in the prejudice analysis are not implicated when the defendant is in custody for another offense. *Mikell*, 960 N.W.2d at 253. Prellwitz acknowledges that he was in custody in connection with other offenses. And he fails to identify any other prejudice that he experienced in the drug-possession case beyond the challenges of pretrial detention. Thus, we determine that Prellwitz was not prejudiced by any delay.

The final part of our analysis requires us to balance the four *Barker* factors to determine whether Prellwitz's trial occurred "quickly enough so as not to endanger the values that the right to a speedy trial protects." *Paige*, 977 N.W.2d at 843. Performing this analysis, we reject Prellwitz's argument that his constitutional right to a speedy trial was violated. Although Prellwitz asserted the right, he was primarily responsible for the delays in his case, and he has failed to identify any prejudice resulting from the delays. Thus, we conclude that Prellwitz was not deprived of his constitutional right to a speedy trial.

## II.     Prellwitz is entitled to a new trial in the gun case because he did not waive his constitutional right to be represented by counsel.

Prellwitz argues—and the state concedes—that Prellwitz is entitled to a new trial in the gun case because he did not waive his constitutional right to counsel. The parties agree

that the district court obtained neither a written nor an on-the-record waiver of counsel from Prellwitz and that Prellwitz represented himself through sentencing in the gun case.

Criminal defendants have a constitutional right to be represented by counsel. *State v. Camacho*, 561 N.W.2d 160, 170 (Minn. 1997). A defendant may waive this right, so long as the waiver is knowing, voluntary, and intelligent. *State v. Worthy*, 583 N.W.2d 270, 275-76 (Minn. 1998). To determine whether a defendant's waiver of the right to counsel is knowing and intelligent, the district court "should comprehensively examine the defendant regarding the defendant's comprehension of the charges, the possible punishments, mitigating circumstances, and any other facts relevant to the defendant's understanding of the consequences of the waiver." *Camacho*, 561 N.W.2d at 173. The Minnesota Rules of Criminal Procedure articulate the procedures that a district court must follow when assessing whether a defendant wishes to waive the right to counsel. *See* Minn. R. Crim. P. 5.04, subd. 1(4) (requiring a written waiver of the right to counsel in felony cases).

Here, the record shows that the district court failed to obtain a valid waiver of counsel from Prellwitz. The denial of a defendant's right to counsel is a structural error, requiring reversal of a conviction. *See Bonga v. State*, 765 N.W.2d 639, 643 (Minn. 2009). Accordingly, we reverse Prellwitz's convictions in the gun case and remand the matter to the district court.

## III.    The arguments in Prellwitz's pro se brief do not warrant relief.

Prellwitz raises additional arguments in a pro se supplemental brief. He contends that: (1) the district court violated the Minnesota Rules of Criminal Procedure by failing

14

to timely hold an omnibus hearing; (2) the police officers did not have a valid reason to stop his car in the drug-possession case; (3) his speedy-trial rights were violated in both the drug-possession case and the gun case; (4) his mother did not voluntarily consent to the search of her home, which led to the charges in the gun case; and (5) the district court judge was biased against him. We consider each of these arguments in turn.

## A. Rules of Criminal Procedure

Prellwitz argues that the district court violated the Minnesota Rules of Criminal Procedure in his drug-possession case because his omnibus hearing was not held within 28 days of his first appearance. Under the rules, if the defendant does not wish to plead guilty at the first appearance, the arraignment "must be continued until the Omnibus Hearing." Minn. R. Crim. P. 8.02, subd. 1. An omnibus hearing occurs in felony cases when a defendant has yet to plead guilty. Minn. R. Crim. P. 11.01. "The court may continue the [omnibus] hearing or any part of the hearing for good cause related to the case." Minn. R. Crim. P. 11.06. Whether to grant or deny a continuance in a criminal proceeding is within the discretion of the district court. *State v. Larson*, 788 N.W.2d 25, 30-31 (Minn. 2010).

As noted, the contested omnibus hearing was delayed, in part, due to Prellwitz's own conduct. Moreover, Prellwitz does not cite any legal authority—nor are we aware of any authority—requiring reversal of conviction based on a delay in holding a contested omnibus hearing. We therefore reject this argument. *See State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008) (declining to consider pro se claims on appeal that are not supported "by either arguments or citations to legal authority").

**B.** **Constitutionality of Traffic Stop Leading to Drug-Possession Case**

Prellwitz challenges the district court's denial of his motion to suppress the evidence stemming from the traffic stop that led to the discovery of methamphetamine. He argues that the district court erred in determining that the police had a valid basis to stop his car.

"When reviewing a district court's pretrial order on a motion to suppress evidence, we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008) (quotation omitted). "A factual finding is clearly erroneous if it does not have evidentiary support in the record . . . ." *State v. Roberts*, 876 N.W.2d 863, 868 (Minn. 2016).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Police may lawfully initiate a traffic stop when they have "a 'particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *State v. Anderson*, 683 N.W.2d 818, 822-23 (Minn. 2004) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "To justify a stop an officer must be able to state something more than an unarticulated 'hunch'; the officer must be able to point to something objectively supporting that suspicion." *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). "Generally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop." *Anderson*, 683 N.W.2d at 823. In considering whether an officer had a reasonable suspicion, Minnesota

courts consider the totality of the circumstances. *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001).

The district court determined that the police officers lawfully stopped Prellwitz because they had a reasonable and articulable suspicion that Prellwitz was driving without a valid license. In reaching this legal conclusion, the district court relied on its factual findings that the officers knew Prellwitz and reasonably believed that he did not have a valid license. The record supports the district court's factual findings. Moreover, we discern no error in the district court's legal determination based upon these facts. *See State v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996) (holding that "the knowledge that the owner of a vehicle has a revoked license is enough to form the basis of a 'reasonable suspicion of criminal activity' when an officer observes the vehicle being driven"). Although Prellwitz argues that the police did not have legal authority to check his driving record, he cites no law to support this proposition. Therefore, we reject Prellwitz's argument that the district court erred in denying his motion to suppress the evidence resulting from the traffic stop.

### C.    Speedy-Trial Violations

Prellwitz argues that he was deprived of his constitutional right to a speedy trial in both the drug-possession case and the gun case. We have already concluded that there was no violation of this right in the drug-possession case.

As to the gun case, we reject Prellwitz's argument because the record confirms that the trial was held within 60 days of Prellwitz's demand for a speedy trial. Prellwitz requested a speedy trial at a hearing on January 3, 2023. And his trial in the gun case commenced on February 9, 2023, approximately five weeks later. This timeframe

17

complied with the Minnesota Rules of Criminal Procedure. *See* Minn. R. Crim. P. 11.09(b) (noting that "[o]n demand of any party after entry of such plea, the trial must start within 60 days unless the court finds good cause for a later trial date"). And because the trial was held within 60 days of the demand, we need not consider whether there was a violation of the constitutional right to a speedy trial. *See Barker*, 407 U.S. at 530 (stating that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into [a speedy-trial analysis]").

D. **Validity of Mother's Consent to Search, Which Led to Search Warrant in Gun Case**

Prellwitz argues that the district court erred in denying his motion to suppress the evidence in the gun case. He challenges the district court's determination that his mother validly consented to the search of her home when police officers responded to the home with a warrant for Prellwitz's arrest.

A warrantless, nonconsensual intrusion into a suspect's dwelling is presumptively unreasonable and a violation of the Fourth Amendment. *State v. Munson*, 594 N.W.2d 128, 135 (Minn. 1999). However, "[c]onsent to entry is a well-recognized exception to the warrant requirement." *State v. Thompson*, 578 N.W.2d 734, 740 (Minn. 1998).

To establish that an individual voluntarily consented to a search, the onus is on the state to prove that the consent was given freely and was "manifestly voluntary." *See State v. Shellito*, 594 N.W.2d 182, 186 (Minn. App. 1999); *see also State v. Harris*, 590 N.W.2d 90, 102 (Minn. 1999) (holding that the state must show by a preponderance of the evidence that consent was given freely and voluntarily). In determining whether consent was

18

voluntary, a court must examine the totality of the circumstances, "including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994). Consent is not voluntary unless "a reasonable person would have felt free to decline the officer's requests or otherwise terminate the encounter." *Id.* (quotation omitted). "An individual does not consent . . . simply by acquiescing to a claim of lawful authority." *State v. Brooks*, 838 N.W.2d 563, 569 (Minn. 2013). Consent can be given verbally or impliedly by nonverbal actions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992).

Whether consent to a search was truly voluntary is a question of fact. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). The appellate court applies the "clearly erroneous" standard in reviewing a district court's finding of voluntary consent. *Id.* A finding of fact is clearly erroneous if, considering all of the evidence, the reviewing court is "left with the definite and firm conviction that a mistake occurred." *Id.* at 846-47.

The district court found that Prellwitz's mother validly consented to a search of her home, and the record supports this conclusion. In making this finding, the district court relied on the testimony of the police officer who searched the home. The district court found that Prellwitz's mother told the officer that Prellwitz was not at home but, based on a prior encounter with the mother, the officer did not believe her. Therefore, the officer asked the mother if he could search the home and she agreed. The district court noted that there was no evidence of intimidation or coercion and that the mother did not place any restrictions on her consent. Because the record supports these findings, the district court

19

did not clearly err in determining that Prellwitz's mother validly consented to the search of her home. Thus, the search did not violate Prellwitz's constitutional rights.

## E.     Judicial Bias

Finally, Prellwitz asserts that the district court judge was biased against him. A reviewing court presumes "that a judge has discharged his or her judicial duties properly." *State v. Mems*, 708 N.W.2d 526, 533 (Minn. 2006). To overcome this presumption, a defendant must allege some impropriety. *See McKenzie v. State*, 583 N.W.2d 744, 747 (Minn. 1998). Prellwitz did not seek to disqualify the judge or otherwise request the judge's removal, so we consider this argument forfeited. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (holding that issues are waived on appeal if not raised to the district court). Even if we were to review this argument, Prellwitz does not point to anything in the record demonstrating bias. On appeal, "error is never presumed," and "the burden of showing error rests upon the one who relies upon it." *Loth v. Loth*, 35 N.W.2d 542, 546 (Minn. 1949) (quotation omitted); *see State v. Fleming*, 869 N.W.2d 319, 329 (Minn. App. 2015) (applying this principle from *Loth* in a criminal case), *aff'd on other grounds*, 883 N.W.2d 790 (Minn. 2016). Because the record does not support a determination that the district court judge was biased, we reject this argument.

**Affirmed in part, reversed in part, and remanded.**